[No. B009244, Second Dist., Div. One. Oct. 25, 1985.]

WAYNE LEE et al., Plaintiffs and Appellants, v.
CITY OF MONTEREY PARK, Defendant and Respondent.

## COUNSEL

Canterbury, Raub & Greenthal, Wayne S. Canterbury and John Clark Brown, Jr., for Plaintiffs and Appellants.

Brown, Winfield & Canzoneri, Thomas F. Winfield III, Thomas D. Green and Mark W. Steres for Defendant and Respondent.

## OPINION

**HANSON (Thaxton), J.**—Plaintiffs Wayne Lee and Monterey Views, a limited partnership, (hereafter Plaintiffs) appeal from the judgment of dismissal entered after the trial court sustained defendant City of Monterey Park's (hereafter City) demurrer to Plaintiffs' complaint for declaratory and injunctive relief. We affirm in part and reverse in part.

### FACTUAL BACKGROUND

On June 8, 1982, the voters of Monterey Park approved two initiative measures limiting the construction of residential units within the City. Measure K established a development allotment system whereby only 100 net dwelling units[1] would be permitted each year from 1983-1992.[2] The allotments were to be distributed according to a competitive point plan to be established by the city council.[3] Measure L, with certain specified exceptions, required amendments to the City's land use element of the general plan, the zoning map, or the zoning code to be ratified by the voters.

---

[1] "Net" is defined in the ordinance as "the total number of net units built on a designated piece of property less the number of units removed or demolished from the same piece of property."

[2] A maximum of 200 net units was permitted for calendar year 1982.

[3] Such a plan was adopted by the city council on November 22, 1982, awarding points according to the following standards: street capacity, effect on local freeway system, fire protection, police protection, water supply system, sanitary sewer system, air quality, schools, hillside stabilization, drainage and views, open space, site and building design and conformance with policies of the general plan.

## Procedural History

Plaintiffs filed their "Second Amended Complaint for Declaratory and Injunctive Relief" containing five causes of action on August 14, 1984, attacking the constitutionality of measures K and L. The action was brought as a taxpayers' suit pursuant to California Code of Civil Procedure section 526a. The complaint alleges the challenged municipal enactments render it infeasible for Monterey Views and its potential successor to economically develop approximately 30 acres of unimproved land situated in Monterey Park so as to provide housing to the people of Monterey Park and the surrounding region.

The trial court sustained City's demurrer to all five counts for failure to state a cause of action and on October 22, 1984 signed and filed its order of dismissal.

## Issues

Plaintiffs contend that the trial court erred in sustaining City's demurrer since their complaint stated the following valid causes of action: That measure K is an unconstitutional exercise of police power and violates the due process clauses of the California and United States Constitutions (counts 1 and 4); that measure K did not comply with various Government Code sections (count 2);[4] that measure K is inconsistent with City's general plan (count 3); and that measure L is an improper exercise of the referendum power (count 5).

## Discussion

Our assessment of Plaintiffs' contentions is necessarily limited by the method in which this case was decided by the trial court (i.e., the sustaining of a demurrer). ■ "[I]n reviewing a judgment of dismissal entered upon the sustaining of a demurrer we accept as true all allegations stated in the complaint. [Citation.] Thus even if we were to entertain doubts that plaintiff could factually support his allegations at trial we are nevertheless obliged to give them deference for purposes of this review." (*Buckaloo* v. *Johnson* (1975) 14 Cal.3d 815, 828 [122 Cal.Rptr. 745, 537 P.2d 865].)

### I.

■ Plaintiffs' first contention on appeal is that the first and fourth causes of action of their complaint validly alleged that measure K violates the due process clauses of the California and United States Constitutions. We agree.

---

[4]Unless otherwise stated, all statutory references are to the Government Code.

In *Associated Home Builders, Inc.* v. *City of Livermore* (1976) 18 Cal.3d 582 [135 Cal.Rptr. 41, 557 P.2d 473, 92 A.L.R.3d 1038] (hereafter *Livermore*), the voters of a city approved an initiative measure which prohibited the issuance of residential building permits until local educational, sewage disposal and water supply facilities complied with specified standards. The Supreme Court remanded the case so that the trial court could hear evidence and decide whether the initiative exceeded the city's police power. The court stated: "We therefore reaffirm the established constitutional principle that a local land use ordinance falls within the authority of the police power if it is reasonably related to the public welfare. Most previous decisions applying this test, however, have involved ordinances without substantial effect beyond the municipal boundaries. The present ordinance, in contrast, significantly affects the interests of nonresidents who are not represented in the city legislative body and cannot vote on a city initiative. We therefore believe it desirable for the guidance of the trial court to clarify the application of the traditional police power test to an ordinance which significantly affects nonresidents of the municipality. [¶] When we inquire whether an ordinance reasonably relates to the public welfare, inquiry should begin by asking *whose* welfare must the ordinance serve. In past cases, when discussing ordinances without significant effect beyond the municipal boundaries, we have been content to assume that the ordinance need only reasonably relate to the welfare of the enacting municipality and its residents. But municipalities are not isolated islands remote from the needs and problems of the area in which they are located; thus an ordinance, superficially reasonable from the limited viewpoint of the municipality, may be disclosed as unreasonable when viewed from a larger perspective. [¶] These considerations impel us to the conclusion that the proper constitutional test is one which inquires whether the ordinance reasonably relates to the welfare of those whom it significantly affects. If its impact is limited to the city boundaries, the inquiry may be limited accordingly; if, as alleged here, the ordinance may strongly influence the supply and distribution of housing for an entire metropolitan region, judicial inquiry must consider the welfare of that region. . . . [¶] We explain the process by which a trial court may determine whether a challenged restriction reasonably relates to the regional welfare. The first step in that analysis is to forecast the probable effect and duration of the restriction. . . . [¶] The second step is to identify the competing interests affected by the restriction. . . . [¶] Having identified and weighed the competing interests, the final step is to determine whether the ordinance, in light of its probable impact, represents a reasonable accommodation of the competing interests." (*Id.*, at pp. 607-609; italics original; fn. omitted.)

In *Arnel Development Co.* v. *City of Costa Mesa* (1981) 126 Cal.App.3d 330 [178 Cal.Rptr. 723], the voters of a city approved an initiative measure

which rezoned an area for the sole purpose of defeating a specific proposed property development project. The court invalidated the measure since it constituted arbitrary and discriminatory rezoning. The court, citing *Livermore,* concluded that the initiative ordinance did not effect an accommodation of the competing regional interests.

It is noteworthy that the initiative measure in the case at bench neither prohibits all new housing construction (as in *Livermore*) nor was it designed to thwart a specific proposed property development (as in *Arnel*). However, the fact that the initiative ordinance in the case at bench is more reasonable on its face than ordinances involved in past cases does not preclude review of its constitutionality.

We therefore turn to the allegations contained in the complaint to determine whether they are deserving of a trial when deemed true.

The following allegations are included in Plaintiffs' first cause of action:

"11. Measure 'K' constitutes an arbitrary and capricious exercise of the police power and is not reasonably related to the advancement of the public welfare in the following respects:

"a. The enactment was adopted without consideration of its probable effect on the public welfare or, in particular, the housing needs, of the region in which Monterey Park is situated, as used herein, 'region' includes the area in which Monterey Park, and all incorporated and unincorporated municipalities contiguous with Monterey Park and significantly affected by the General Plan of Monterey Park within the meaning of Government Code Section 65584, are situated.

". . . . . . . . . . . . . . . . . . . . .

"c. Plaintiffs are informed and believe and thereon allege that the purported burdens on Monterey Park's traffic, water, school and other systems and services described in section 1(b) of Measure 'K' are no greater than those faced by other communities within the region in which Monterey Park is situated, and that the enforcement of Measure 'K' will necessarily increase the burdens on the systems and services of those communities to a disproportionate and inequitable degree.

"d. The enactment fails to identify and accommodate competing municipal interests, including the need for adequate municipal services on the one hand, and safe, sanitary and affordable housing on the other.

"...........................

"f. The enactment is unreasonable and wrongfully discriminatory insofar as it exempts government funded or subsidized projects for the reasons that (i) such projects place burdens on municipal services to an extent equal to or greater than non-government funded or subsidized projects and (ii) the exemption is a sham calculated to obscure the purpose of the Measure to unreasonably reduce housing opportunities in the City of Monterey Park."

When deemed admitted, as they must be for purposes of a demurrer, we hold the first and fourth causes of action state valid causes of action.

For the benefit of the trial court, we shall decide the effect of Evidence Code section 669.5 upon this case.[5]

Evidence Code section 669.5 provides: "(a) Any ordinance enacted by the governing body of a city, county, or city and county which directly limits, by number, (1) the building permits that may be issued for residential construction or (2) the buildable lots which may be developed for residential purposes, is presumed to have an impact on the supply of residential units available in an area which includes territory outside the jurisdiction of such city, county, or city and county. [¶] (b) With respect to any action which challenges the validity of such an ordinance, the city, county, or city and county enacting such ordinance shall bear the burden of proof that such ordinance is necessary for the protection of the public health, safety, or welfare of the population of such city, county, or city and county. . . . [¶] (d) This section shall not apply to a voter approved ordinance adopted by referendum or initiative prior to the effective date of this section which (1) requires the city, county, or city and county to establish a population growth limit which represents its fair share of each year's statewide population growth, or (2) which sets a growth rate of no more than the average population growth rate experienced by the state as a whole."

■ Plaintiffs argue that by enacting Evidence Code section 669.5, the Legislature has created an exception to the presumed constitutionality of a municipal ordinance. City, on the other hand, argues that the language of Evidence Code section 669.5, subdivision (a) limits its effect to ordinances enacted by a "governing body" and therefore does not apply to ordinances adopted through the initiative process. Our review of the legislative history

---

[5]Plaintiffs have requested that we defer our decision in this case until the Supreme Court issues its decision in *Building Industry Assn.* v. *City of Camarillo* (Cal.App.) (hg. granted Aug. 22, 1985, L.A. 32097), a case involving the applicability of Evidence Code section 669.5 to initiative measures. We elect to decide the case now.

of Evidence Code section 669.5 leads us to conclude that its provisions apply to all ordinances whether enacted by the legislative body or the voters.

Assembly Bill No. 3252, as introduced on March 12, 1980, made no distinction between ordinances adopted by way of a city council measure and those adopted through the initiative process. The bill was amended in the Assembly on April 30, 1980 to specifically exclude measures adopted through the initiative process. The bill was sent to a conference committee to resolve differences between the versions of the bill as adopted by the Assembly and the Senate. Pursuant to the recommendations of the conference committee, both houses consented to deleting the specific exclusion of initiative measures and adding subdivision (d) which excludes particular initiative or referendum measures that were adopted prior to the effective date of the bill. It is this version of the bill which became Evidence Code section 669.5.

This summary of the legislative history makes it abundantly clear that the Legislature at one time intended to exclude all initiative measures but ultimately decided that only specific types of initiative measures should be excluded. While a persuasive argument can be made that when a city council adopts an ordinance it may more easily meet the burden of proof imposed by Evidence Code section 669.5 since it has a record of the hearings it may have conducted and evidence it may have received, whereas an initiative passed by the voters does not involve the same process of evidence gathering, such concerns were presumably considered by the Legislature when it decided not to exclude all initiative measures. Whether the burden of proof in such cases should be shifted to a city is a policy decision that has been made by the Legislature.

We therefore conclude that, pursuant to Evidence Code section 669.5, it is City and not Plaintiffs that have the burden of proving that the ordinance in question is reasonably related to the public welfare.

II.

Plaintiffs' second contention on appeal is that the second cause of action of their complaint validly alleged that measure K failed to comply with sections 65302.8 and 65863.6. We disagree.

Section 65302.8 provides: "If a county or city, including a charter city, adopts or amends a mandatory general plan element which operates to limit the number of housing units which may be constructed on an annual basis, such adoption or amendment shall contain findings which justify reducing the housing opportunities of the region. The findings shall include all of the

following: [¶] (a) A description of the city's or county's appropriate share of the regional need for housing. [¶] (b) A description of the specific housing programs and activities being undertaken by the local jurisdiction to fulfill the requirements of subdivision (c) of Section 65302. [¶] (c) A description of how the public health, safety, and welfare would be promoted by such adoption or amendment. [¶] (d) The fiscal and environmental resources available to the local jurisdiction."

■■■ ■■■ Not being an amendment to City's general plan, section 65302.8 does not apply to measure K.[6]

Section 65863.6 provides: "In carrying out the provisions of this chapter, each county and city shall consider the effect of ordinances adopted pursuant to this chapter on the housing needs of the region in which the local jurisdiction is situated and balance these needs against the public service needs of its residents and available fiscal and environmental resources. Any ordinance adopted pursuant to this chapter which, by its terms, limits the number of housing units which may be constructed on an annual basis shall contain findings as to the public health, safety, and welfare of the city or county to be promoted by the adoption of the ordinance which justify reducing the housing opportunities of the region."

Measure K contains the following statement of findings:

"SECTION 1—FINDINGS. The People of the City of Monterey Park hereby find and declare as follows:

"(a) The City of Monterey Park has adopted a General Plan and City Ordinances relating to the regulation of residential development;

"(b) The City of Monterey Park has experienced residential development which is adversely affecting the capacity of the city to provide essential municipal services and facilities. This is exemplified by overcrowding in

---

[6]Plaintiffs argue that measure K must be considered an amendment to the general plan by this court for the following reasons: (1) Their complaint alleges that measure K is an amendment to the general plan and (2) measure K effectively amends a provision of the housing element of City's general plan which allegedly states: "To replace units in need of demolition, alleviate overcrowded conditions and keep pace with the population change, the City should have at least 500 new units each year between 1978 and 1984."

Regarding their first argument, while it is true that factual allegations must be deemed admitted for purposes of a demurrer, the same is not true for legal conclusions. (*Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 713 [63 Cal.Rptr. 724, 433 P.2d 732].)

Regarding their second argument, the only reference to City's general plan in the record before this court is the passage quoted above that is contained in Plaintiffs' *unverified* second amended complaint. This being the case, Plaintiffs have failed to provide this court with an adequate record to support their argument.

the local school system, capacity of the sewer system to meet the current demands, the availability of adequate water supply to meet future demands, the ability of the City to maintain an adequate level police and fire protection and sufficient maintenance of park and recreational facilities in relation to growing population, and increased traffic congestion;

"(c) It is the intent of the People of the City of Monterey Park to achieve a steady, rather than a fluctuating, overly rapid, rate of residential growth each year in order that the services provided by City, school, park, utility, and/or service agencies operating in the City can be properly and effectively staged in a manner which will not overextend existing facilities, will allow the opportunity to bring deficient services up to required and necessary standards, and will minimize costs of facility expansion through long-range planning;

"(d) It is the intent of the People of the City of Monterey Park to establish control over the quality, distribution, and rate of growth of the City in the interest of: preserving the character of the community; protecting the open space of the City; insuring the adequacy of City facilities, recreation and park facilities, and services; insuring a balance of housing types in the City which will accommodate a variety of families; insuring the balanced development of the City; mitigating further deterioration in the local air quality; insuring that the traffic demands do not exceed the capacity of streets that are in character with the City; insuring that the City does not grow in a pattern that places a severe strain on the local freeway system; insuring the adequacy of police and fire protection; insuring adequate water and sanitary sewer systems; and insuring adequate hillside stabilization, drainage and protecting views from obstruction;

"(e) It is the purpose of this ordinance to augment the policies of the City as recorded in the General Plan and City ordinances relating to the regulation of residential development; and

"(f) In order to accomplish this purpose, the City must be able to control the rate, distribution, and quality of proposed residential development on a year to year basis. To this end the following residential development limitation system for the City shall be in effect from and after its effective date until December 31, 1992."

■ We conclude that this statement of findings satisfied the requirements of section 65863.6.[7] Plaintiffs argue that they are still entitled to a trial on

---

[7]Since we conclude that adequate findings were contained in measure K, we need not resolve the broader issue of whether initiative measures are exempt from section 65863.6's provisions.

the issue of whether these findings are supported by substantial evidence. Plaintiffs will have this opportunity when the City produces its evidence on the issue of whether measure K is reasonably related to the public welfare.

We therefore conclude that the trial court properly sustained City's demurrer to this cause of action.

## III.

Plaintiffs' third contention on appeal is that the third cause of action of their complaint validly alleged that measure K is inconsistent with City's general plan.

Section 65860 provides, in pertinent part: "(a) County or city zoning ordinances shall be consistent with the general plan of the county or city by January 1, 1974. A zoning ordinance shall be consistent with a city or county general plan only if: [¶] (i) The city or county has officially adopted such a plan, and [¶] (ii) The various land uses authorized by the ordinance are compatible with the objectives, policies, general land uses, and programs specified in such a plan. [¶] (b) Any resident or property owner within a city or a county, as the case may be, may bring an action in the superior court to enforce compliance with the provisions of subdivision (a). Any such action or proceedings shall be governed by Chapter 2 (commencing with Section 1084) of Title 1 of Part 3 of the Code of Civil Procedure. Any action or proceedings taken pursuant to the provisions of this subdivision shall be taken within 90 days of the enactment of any new zoning ordinance or the amendment of any existing zoning ordinance as to said amendment or amendments."

In the case at bench, more than 90 days elapsed before Plaintiffs filed their complaint. Plaintiffs argue that the 90-day limit does not apply to them since rather than seeking compliance with section 65860, subdivision (a), they were seeking a declaration that measure K was unconstitutional and therefore void. Plaintiffs' semantical distinction is unconvincing. Plaintiffs' third cause of action alleged that measure K is inconsistent with City's general plan. This is precisely the subject matter governed by section 65860.

We therefore conclude that the trial court properly sustained City's demurrer to this cause of action.

## IV.

Plaintiffs' final contention on appeal is that the fifth cause of action of their complaint validly alleged that measure L improperly invoked the referendum power.

Measure L, with certain specified exceptions, required amendments to City's land use element of the general plan, zoning map or zoning code to be approved by the voters.[8]

Article II, section 11 of the California Constitution provides, in pertinent part, "Initiative and referendum powers may be exercised by the electors of each city or county under procedures that the Legislature shall provide."

Elections Code section 4017 provides: "The legislative body of the city may submit to the voters, without a petition therefor, a proposition for the repeal, amendment, or enactment of any ordinance, to be voted upon at any succeeding regular or special city election, and if the proposition submitted receives a majority of the votes cast on it at the election, the ordinance shall be repealed, amended or enacted accordingly. A proposition may be submitted, or a special election may be called for the purpose of voting on a proposition, by ordinance or resolution."[9]

Elections Code section 4051 provides: "If a petition protesting against the adoption of an ordinance and circulated by any qualified registered voter of the city, is submitted to the clerk of the legislative body of the city within 30 days of the adoption of the ordinance, and is signed by not less than 10 percent of the voters of the city . . . the effective date of the ordinance shall be suspended, and the legislative body shall reconsider the ordinance."

---

[8]The pertinent text of measure L is as follows:

"SECTION 1. No amendment of the Land Use Element of the General Plan, the Zoning Map and/or the Zoning Code of the City of Monterey Park as heretofore amended or any other action of the City Council by which there would be permitted any use of land other than as presently defined in the said Land Use Element, Zoning Map and/or Zoning Code of the City of Monterey Park shall be valid or effective for any purpose whatsoever unless and until such amendment shall have been approved by a majority of those voters of the City voting thereon at any regular or special municipal election; and the City Council shall refer any such amendment approved by it to said voters pursuant to the provisions of Section 4017 of the Election Code of the State of California.

"SECTION 2. APPLICABILITY. The provisions of this ordinance shall apply from the effective date to all zoned areas of the City as presently described in the Land Use Element of the General Plan, Zoning Map, and/or Zoning Code of the City of Monterey Park but do *not* apply to the following:

"A. Variances

"B. Conditional Use Permits

"C. Changes in uses and requirements within zones which do not increase residential densities (defined as total number of dwelling units per gross acre as prescribed by the Zoning Code), or do not change lot size or building height requirements in the Commercial or Manufacturing zones as currently defined by the Zoning Code.

"D. Rehabilitation and remodeling of existing developments.

"E. Changes in zoning which do not exceed one (1) acre of land.

"F. Dwelling units of any low or moderate income and senior citizen projects funded or subsidized pursuant to the provisions of applicable Federal, State, or Local laws or programs."

[9]Elections Code section 4057 makes this section applicable to the referendum process.

Elections Code section 4055 provides, in pertinent part: "If the legislative body does not entirely repeal the ordinance against which the petition is filed, the legislative body shall submit the ordinance to the voters. . . . The ordinance shall not become effective until a majority of the voters voting on the ordinance vote in favor of it. . . ."

Plaintiffs rely on these sections to argue that measure L has converted a permissive power of the Legislature (i.e., submitting proposals to the voters when the Legislature so desired) into a mandatory requirement and has done so in disregard of the 10 percent signature requirement. They argue this violates the procedure required by article II, section 11 of the California Constitution. We disagree.

Article IV, section 1 of the California Constitution reserves the powers of initiative and referendum to the people. ■■■ Moreover, "the only function of the applicable sections of the Elections Code is to facilitate the operation of the constitutional power of referendum; and such facilitating legislation may in no way limit or restrict that power." (*Dye v. Council of the City of Compton* (1947) 80 Cal.App.2d 486, 491 [182 P.2d 623].)

■■■ In *Builders Assn. of Santa Clara–Santa Cruz Counties v. Superior Court* (1974) 13 Cal.3d 225 [118 Cal.Rptr. 158, 529 P.2d 582], the voters of the City of San Jose enacted an initiative ordinance restricting the zoning of land for residential use for a period of two years during which time the city would conduct a study of the impact of residential development upon the city's overcrowded schools. The plaintiff in that case argued, inter alia, that since a city council could not, by ordinance, prevent a future city council from considering zoning applications, neither could the people achieve the same result with the present city council by way of an initiative ordinance. The court rejected this argument stating "The courts, however, have upheld the right of residents of charter cities, in enacting zoning initiatives, to bar the city council from altering or repealing the zoning established by the initiative. [Citations.] We see no difference in principle between an initiative which bars a city council from repealing newly enacted zoning restrictions, and one which freezes existing restrictions; either, to be effective, must limit the power of a hostile city council to evade or repeal the initiative ordinance." (*Id.,* at pp. 230-231.)

Similarly, we see no difference between an initiative ordinance which precludes any amendment and one which permits amendments but requires voter approval to become effective.

We therefore conclude that the trial court properly sustained City's demurrer to the fifth cause of action.

## Disposition

The judgment of dismissal is reversed as to the first and fourth causes of action alleging that measure K is not reasonably related to the public welfare. The judgment of dismissal is affirmed as to the second, third and fifth causes of action.

Spencer, P. J., and Lucas, J., concurred.

Respondent's petition for review by the Supreme Court was denied February 14, 1986