[L.A. No. 32097. May 22, 1986.]

BUILDING INDUSTRY ASSOCIATION OF SOUTHERN
CALIFORNIA, INC., Plaintiff and Appellant, v.
CITY OF CAMARILLO, Defendant and Respondent.

**814**

COUNSEL

Stanley E. Cohen, David W. Tredway, Mitchel B. Kahn and Cohen, England & Whitfield for Plaintiff and Appellant.

Ronald A. Zumbrun, Robert K. Best, Thomas W. Birmingham and John H. Lee as Amici Curiae on behalf of Plaintiff and Appellant.

Colin Lennard, City Attorney, Burke, Williams & Sorensen, Katherine E. Stone and Cristina L. Sierra for Defendant and Respondent.

Gregory A. Hile, Harvey & Gentry, Mark I. Weinberger, Shute, Mihaly & Weinberger and Daniel P. Selmi as Amici Curiae on behalf of Defendant and Respondent.

OPINION

LUCAS, J.—This case presents two issues for review: (1) Is Evidence Code section 669.5,[1] which shifts the burden of proof in actions challenging the

---

[1] "(a) Any ordinance enacted by the governing body of a city, county, or city and county which directly limits, by number, (1) the building permits that may be issued for residential construction or (2) the buildable lots which may be developed for residential purposes, is presumed to have an impact on the supply of residential units available in an area which includes territory outside the jurisdiction of such city, county, or city and county.

"(b) With respect to any action which challenges the validity of such an ordinance, the city, county, or city and county enacting such ordinance shall bear the burden of proof that such ordinance is necessary for the protection of the public health, safety, or welfare of the population of such city, county, or city and county.

"(c) This section does not apply to ordinances which (1) impose a moratorium, to protect the public health and safety, on residential construction for a specified period of time, if, under the terms of the ordinance, the moratorium will cease when the public health or safety is no longer jeopardized by such construction, or (2) create agricultural preserves under Chapter 7 (commencing with Section 51200) of Part 1 of Division 1 of Title 5 of the Government Code, or (3) restrict the number of buildable parcels by limiting the minimum size of buildable parcels within a zone or by designating lands within a zone for nonresidential uses.

"(d) This section shall not apply to a voter approved ordinance adopted by referendum or initiative prior to the effective date of this section which (1) requires the city, county, or city and county to establish a population growth limit which represents its fair share of each year's statewide population growth, or (2) which sets a growth rate of no more than the average population growth rate experienced by the state as a whole."

validity of growth control ordinances, applicable to such an ordinance enacted by the initiative process? (2) Is Government Code section 65863.6,[2] which requires cities and counties to balance housing needs against public service needs before passing growth control ordinances, and to list in those ordinances findings as to the public health, safety, and welfare to be promoted which justify reducing the housing opportunities of the region, applicable to a growth control ordinance enacted by means of the initiative process?

We conclude that Evidence Code section 669.5 applies to ordinances enacted by initiative after the effective date of that section, but that Government Code section 65863.6 does not apply to such ordinances.

1. FACTS

On June 2, 1981, the voters of the City of Camarillo (City) adopted an initiative for a growth control ordinance, which was referred to as Measure A. The stated purpose of the ordinance was to achieve a steady rate of residential growth and insure the adequacy of city, school, and recreation facilities. Measure A limited the number of "dwelling units" constructed in City to 400 per year for the years 1982 to 1995. Single family homes, subsidized low income and senior citizen housing, remodelling of existing dwellings, and fourplexes or lesser numbered multiple dwellings on a single lot were exempted from the ordinance. Developers must compete each year for the right to construct these 400 units.

Building Industry Association of Southern California (BIA) and Pardee Construction Company (Pardee) filed separate complaints against City, challenging the validity of Measure A on numerous grounds. The two actions were consolidated for trial. In June 1983, the trial court granted a motion for partial summary judgment. The court ruled as follows: (1) Section 669.5 of the Evidence Code is not applicable to Measure A; (2) the measure does not conflict with sections 65302.8, 65580, 65583, or 65584 of the Government Code; (3) it does not conflict with the Subdivision Map Act; and (4) it does not conflict with section 65863.6 of the Government Code.

Following the trial court's ruling, the parties entered into the following stipulation. Pardee agreed to dismiss its complaint. BIA and City agreed

---

[2]"In carrying out the provisions of this chapter, each county and city shall consider the effect of ordinances adopted pursuant to this chapter on the housing needs of the region in which the local jurisdiction is situated and balance these needs against the public service needs of its residents and available fiscal and environmental resources. Any ordinance adopted pursuant to this chapter which, by its terms, limits the number of housing units which may be constructed on an annual basis shall contain findings as to the public health, safety, and welfare of the city or county to be promoted by the adoption of the ordinance which justify reducing the housing opportunities of the region."

that the remaining issue was whether "[i]t is fairly debatable that . . . [Measure A] in fact bears a reasonable relation to the general welfare. (*Associated Homebuilders etc., Inc.* v. *City of Livermore* (1976) 18 Cal.3d 582, 601 [135 Cal.Rptr. 41, 557 P.2d 473, 92 A.L.R.3d 1038].)" They also agreed that, following the partial summary judgment, BIA would bear the burden of proof of this issue. Because BIA conceded that it could not prevail on the remaining issue if it had the burden of proof, the parties stipulated that judgment be entered in favor of City. The agreement stated that the sole purpose of the stipulated judgment was to permit BIA to appeal the trial court's rulings. The parties agreed that if an appellate court reversed the trial court's ruling concerning Evidence Code section 669.5 (relating to which party has the burden of proof), a trial on the merits would be required.

BIA did not appeal the rulings that Measure A does not conflict with Government Code sections 65302.8, 65580, 65583, and 65584 or with the Subdivision Map Act. The appeal was limited to whether Evidence Code section 669.5 is applicable to Measure A and whether the measure conflicts with Government Code section 65863.6.

2. THE COURT OF APPEAL OPINION

This matter comes to us on a petition for review and, accordingly, we will briefly address the Court of Appeal opinion. City had argued that Evidence Code section 669.5 does not apply to Measure A because the measure does not "directly limit, by number, the building permits that may be issued for residential construction" or "the buildable lots which may be developed for residential purposes." The Court of Appeal rejected City's argument, stating that this argument ignores reality, and that, because the practical effect of Measure A is to preclude tract development in Camarillo beyond 400 units per year through 1995, the measure is the sort of ordinance to which Evidence Code section 669.5 would apply *if* that section applied to ordinances enacted by initiative.

Nonetheless, after examining the legislative history of Evidence Code section 669.5, the Court of Appeal determined that it was unclear whether the statute was intended to apply to initiative measures. The court perceived itself as forced to choose between two plausible interpretations of an ambiguous statute. It expressed concern over whether, because planning data to justify the initiative measure might not be available to the governing body having the burden of proof, the statute would unconstitutionally bar initiative growth control ordinances. Because the statute should be construed to eliminate doubts as to the provision's constitutionality (see *In re Kay* (1970) 1 Cal.3d 930, 942 [83 Cal.Rptr. 686, 464 P.2d 142]), the Court of Appeal

adopted the construction that Evidence Code section 669.5 does not apply to initiative measures. We disagree.

In determining whether Government Code section 65863.6 applies to initiatives, the Court of Appeal concluded that Measure A is a "zoning regulation" of the type covered by Government Code chapter 4, title 7, division 1. However, the justices found illogical the application of Government Code section 65863.6 to initiative measures, stating that, "There is a world of difference in requiring a city council to justify its findings, and to show that it considered the effect on housing needs of the region . . . and in requiring the electorate to do so." Using an analysis similar to ours in *Associated Home Builders etc., Inc.* v. *City of Livermore, supra,* 18 Cal.3d at page 596, the Court of Appeal held that Government Code section 65863.6 sets out procedures to be followed by a governing body of a city or county, not by an electorate before voting on an initiative measure.

■ In a concurring opinion, Presiding Justice Lillie argued that the merits of the case should not have been reached. She stated that the appeal had been tainted because the parties stipulated to a final judgment following entry of an unappealable partial summary judgment in order to allow BIA to pursue an appeal. Justice Lillie contended that, for policy reasons, we ought not allow parties by stipulation to avoid the effect of the one final judgment rule, and furthermore, an appeal should not be heard from a judgment to which the plaintiff consented. The majority responded to Justice Lillie's first argument by pointing out that it is "wasteful of trial court time" to require the plaintiff to undergo a probably unsuccessful court trial merely to obtain an appealable judgment. To the second argument, the majority replied that here plaintiff did not really consent to the judgment, but merely acknowledged that it could not win the case if it had the burden of proof. More important, there is an exception to the rule that a party may not appeal a consent judgment. If consent was merely given to facilitate an appeal following adverse determination of a critical issue, the party will not lose his right to be heard on appeal. (*Meacham* v. *McKay* (1869) 37 Cal. 154, 159; *Kenworthy* v. *Hadden* (1978) 87 Cal.App.3d 696, 700 [151 Cal.Rptr. 169].) We thus may address the merits of the issue under section 669.5 of the Evidence Code.

## 3. Discussion

### A. *Application of Evidence Code Section 669.5 to Initiative Measures*

In 1980, the Legislature adopted Evidence Code section 669.5, which establishes a presumption that growth limitation ordinances adversely affect regional housing needs and places the burden of proof on the city or county

to show that the ordinance is necessary to promote public health, safety, and welfare. ▮ It is clear from section 1 of Assembly Bill No. 3252 (which added § 669.5 to the Evidence Code) that the Legislature intended to shift the burden of proof to the proponents of growth control legislation as a matter of public policy in order to counteract unjustified limitations on the supply of local housing sufficient to meet the municipality's share of regional housing needs.

In enacting section 669.5, the Legislature stated that "an adequate supply of housing is necessary for the health, safety, and public welfare of all Californians. The Legislature further finds and declares that local government ordinances which severely restrict the number of housing units which may be constructed have an effect on the supply of housing within the region, may exacerbate the housing market conditions in surrounding jurisdictions, and may limit access to affordable housing within the jurisdiction and in the region. While the Legislature recognizes that, in certain instances, the public health, safety, and welfare warrant enactment of such ordinances, increasing public need for adequate housing requires that local governments properly establish the need for such ordinances and balance the need for such ordinances against the need for new housing opportunities." (Stats. 1980, ch. 1144, § 1, p. 3703.)

▮ The controversy here between the parties concerning section 669.5 centers around the term "governing body" in subdivision (a), and the reference in subdivision (d) to matters adopted by initiative. While subdivision (a) states that the statute's provisions apply to ordinances "enacted by the governing body of a city, county, or city and county . . .," subdivision (d) expressly exempts certain initiative measures adopted prior to the effective date (Jan. 1, 1981) of section 669.5.

City contends that because section 669.5 contains the term "governing body" and because there is no ambiguity in this term, the plain meaning should be ascribed to the term. The term "governing body" excludes the electorate. (See *Reidman* v. *Brison* (1933) 217 Cal. 383, 387 [18 P.2d 947].) ▮ If the language is clear, there can be no room for interpretation; effect must be given to the plain meaning of the words. (*Teachers Management & Inv. Corp.* v. *City of Santa Cruz* (1976) 64 Cal.App.3d 438, 446 [134 Cal.Rptr. 523].)

▮ BIA, on the other hand, argues that the words "governing body" cannot be considered by themselves, but must be analyzed within the context of the *entire* statute. The question is not whether the words "governing body" are ambiguous but whether section 669.5 itself is unclear. ▮ "[T]he 'intention of the legislature will be determined so far as possible

from the language of its statutes, read as a whole, and if the words of an enactment, given their ordinary and popular signification, are reasonably free from ambiguity and uncertainty, the courts will look no further to ascertain its meaning.' [Citation.]" (*Pepper* v. *Board of Directors* (1958) 162 Cal.App.2d 1, 4 [327 P.2d 928].) Legislative intent must be gleaned from the whole act rather than from isolated words. (*Marrujo* v. *Hunt* (1977) 71 Cal.App.3d 972, 977 [138 Cal.Rptr. 220].)

▉ Ambiguity *does* exist within section 669.5. The language of section 669.5, subdivision (a), appears to limit the provisions of subdivision (b) to ordinances "enacted by the governing body of a city, county, or city and county . . . ." But subdivision (d), which states that "[t]his section shall not apply to a voter approved ordinance adopted by referendum or initiative prior to the effective date of this section . . ." implies that section 669.5 is applicable to initiative measures adopted *after* the effective date. If section 669.5, subdivision (a), truly is taken literally, all initiative measures are excluded and there would be no need for subdivision (d) excluding a portion of initiative measures. Although City makes an argument that subdivision (d) might have been added merely out of an abundance of caution, that argument seems too weak to clear up the statutory ambiguity.

Given the ambiguity and the conflict in section 669.5, we must look beyond the language of the provision to determine legislative intent. (*In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 590 [128 Cal.Rptr. 427, 546 P.2d 1371].) ▉ The cardinal rule of statutory construction is to ascertain and give effect to the intent of the Legislature. (*Steketee* v. *Lintz, Williams & Rothberg* (1985) 38 Cal.3d 46, 51 [210 Cal.Rptr. 781, 694 P.2d 1153].) ▉ The legislative history of Assembly Bill No. 3252 indicates that the Legislature had at one time considered, but later rejected, the possibility of making *all* initiatives exempt from application of the statute. In its original form, as introduced on March 12, 1980, the language of the bill read in part: "*Any ordinance enacted* by a city, county, or city and county which directly limits, by number . . . ." (Italics added.) The term "governing body" is missing from this original version, and there is no express reference to initiative measures.

On April 30, 1980, the Assembly approved amendments to Assembly Bill No. 3252, and the amended version read: "Any ordinance enacted by *the governing body of* a city, county, or city and county, *except an ordinance enacted pursuant to the provisions of an initiative measure approved by the voters of such city, county, or city and county* which directly limits, by number . . . ." (Italics added.) This version clearly would have excluded all initiative measures from the application of section 669.5. In addition, the wording of this version indicates that the Legislature must have assumed

that measures enacted by a "governing body" *included* initiatives adopted by the electorate, since initiatives were exempted from the reach of the statute within the same sentence.

The final version of section 669.5 recommended by a conference committee resolving differences between the versions of the bill in the Senate and the Assembly, suggested that the language exempting *all* initiatives be deleted and instead that present subdivision (d) be adopted. As recommended, the Legislature deleted the language exempting all initiative measures and added subdivision (d), exempting only those initiative measures adopted before the effective date of the statute.

The Court of Appeal recently faced this same issue in *Lee v. City of Monterey Park* (1985) 173 Cal.App.3d 798 [219 Cal.Rptr. 309]. After analyzing the history of Assembly Bill No. 3252, that court concluded: "This summary of the legislative history makes it abundantly clear that the Legislature at one time intended to exclude all initiative measures but ultimately decided that only specific measures should be excluded. While a persuasive argument can be made that when a city council adopts an ordinance it may more easily meet the burden of proof imposed by Evidence Code section 669.5 since it has a record of the hearings it may have conducted and evidence it may have received, whereas an initiative passed by the voters does not involve the same process of evidence gathering, such concerns were presumably considered by the Legislature when it decided not to exclude all initiative measures. Whether the burden of proof in such cases should be shifted to a city is a policy decision that has been made by the Legislature." (P. 807.) We agree with that court's holding that the legislative history indicates that section 669.5 applies to initiative measures adopted after the effective date of the statute.

Concluding that section 669.5 does not apply to initiative measures would render subdivision (d) meaningless. ■ The cases do not suggest that an unreasonable or implausible construction may be given to a statute to avoid consideration of potential constitutional problems. The construction must be consistent with statutory language and purpose. (See *In re Kay, supra,* 1 Cal.3d at p. 942.) ■ The present Court of Appeal's interpretation of section 669.5 is inconsistent with the statutory language and with the purpose of the statute, which is to support the public policy favoring construction of affordable housing. Since initiative measures amount to approximately one-half of the growth limitation ordinances passed in California (State of Cal., Office of Planning and Research, The Growth Revolt: Aftershock of Proposition 13 (Aug. 1980) p. 1), to exempt initiative measures from section 669.5 would be a major impediment to accomplishing the purpose of the law.

B. *Constitutionality of Evidence Code Section 669.5 as Applied to Initiative Ordinances*

■ Having found that Evidence Code section 669.5 applies to initiative measures, we must examine the constitutionality of such application. One might argue that section 669.5 is unconstitutional because "legislation which permits council action but effectively bars initiative action may run afoul of the 1911 amendment [to the California Constitution which reserves the right of initiative on behalf of municipal voters]." (*Associated Home Builders etc., Inc.* v. *City of Livermore, supra,* 18 Cal.3d at p. 595.)

■ The 1911 amendment to the California Constitution, which provides for the initiative and referendum, "[d]rafted in light of the theory that all power of government ultimately resides in the people, . . . speaks of the initiative and referendum, not as a right granted the people, but as a power reserved by them. Declaring it 'the duty of the courts to jealously guard this right of the people' (*Martin* v. *Smith* (1959) 176 Cal.App.2d 115, 117 [1 Cal.Rptr. 307]), the courts have described the initiative and referendum as articulating 'one of the most precious rights of our democratic process' (*Mervynne* v. *Acker* [1961] 189 Cal.App.2d 558, 563 [11 Cal.Rptr. 340]). '[I]t has long been our judicial policy to apply a liberal construction to this power wherever it is challenged in order that the right be not improperly annulled. If doubts can reasonably be resolved in favor of the use of this reserve power, courts will preserve it.' (*Mervynne* v. *Acker, supra,* 189 Cal.App.2d 558, 563-564; *Gayle* v. *Hamm* [1972] 25 Cal.App.3d 250, 258 [101 Cal.Rptr. 628].)" (*Associated Home Builders etc., Inc.* v. *City of Livermore, supra,* 18 Cal.3d at p. 591, fn. omitted.) ■ The 1911 amendment stated that "This section is self-executing, but legislation may be enacted to facilitate its operation, but in no way limiting or restricting either the provisions of this section or the powers herein reserved." (Former Cal. Const., art. IV, § 1.)

■ Referring to *Associated Home Builders,* we stated in *Legislature* v. *Deukmejian* (1983) 34 Cal.3d 658, 674-675 [194 Cal.Rptr. 781, 669 P.2d 17], that: "That case did not hold . . . that the power of initiative is not subject to the same limitations as is legislative action. Rather . . . the court reaffirmed the understanding that the power of the people through the statutory initiative is coextensive with the power of the Legislature. . . . The court warned that a statute which made compliance with *procedural* requirements a prerequisite to enactment of local ordinances would be constitutionally suspect if applied to preclude enactment by initiative of an ordinance on a subject on which the city council could legislate. That decision does not, therefore, support the argument that the people may enact a statute which the Legislature has no power to enact."

It does not appear that section 669.5's effect on initiative measures could be described as "effectively barring" initiative action. Section 669.5 places no procedural barriers on the ability of the electorate to legislate through the power of initiative. Section 669.5 simply requires that, if the electorate exercises its initiative power, the local government must bear the burden of showing that the ordinance is reasonably related to the protection of the public health, safety, or welfare of the affected population.

Amicus San Clementeans for Managed Growth argues that section 669.5 substantially impairs the ability of the people to exercise initiative power because the proponents of the initiative would not have an effective way to defend it. Despite the fact that the city or county would have a duty to defend the ordinance, a city or county might not do so with vigor if it has underlying opposition to the ordinance. Furthermore, the proponents of the initiative have no guarantee of being permitted to intervene in the action, a matter which is discretionary with the trial court. (See Code Civ. Proc., § 387.) This argument would have merit if intervention was unavailable. But when a city or county is required to defend an initiative ordinance and, because of Evidence Code section 669.5, must shoulder the burden of proving reasonable relationship to public health, safety or welfare, we believe the trial court in most instances should allow intervention by proponents of the initiative. To fail to do so may well be an abuse of discretion. Permitting intervention by the initiative proponents under these circumstances would serve to guard the people's right to exercise initiative power, a right that must be jealously defended by the courts. (See *Martin* v. *Smith, supra,* 176 Cal.App.2d at p. 117.)

City suggests that local governments might not be able to bear the burden of proof needed to sustain an initiative measure because they would not possess the necessary planning data. This suggestion largely ignores the reality of land use planning in this state. For example, prior to its adoption, Measure A was debated at public forums and in the newspapers. Over $107,000 was spent by proponents and opponents of Measure A in the campaign. The information generated by such campaigns can serve as data for the local government to use in defending the ordinance. In addition, cities are required by state law to develop a housing element as part of a general plan. This process develops additional and substantial data concerning housing within the city and the general area, all of which is readily available to the local government. Evidence Code section 669.5 will not impede the adoption of growth control ordinances. It simply shifts to the local government the burden of proving that the growth control ordinance is necessary for the protection of the public health, safety, or welfare if the ordinance is challenged. Because local government is capable of carrying out the requirement of section 669.5, whether or not the growth control

ordinance originated as an initiative measure, we conclude that no unconstitutional impediment of the initiative process occurs.

C. *Government Code Section 65863.6*

■ Government Code section 65863.6 is contained in a chapter of the code relating to zoning regulations. (Ch. 4.) The section requires a city or county to "consider the effect of ordinances" on local housing needs and to balance those housing needs against the public service needs and the available fiscal and environmental services. Any ordinance adopted must contain findings as to the public health, safety, and welfare factors which justify restricting the housing opportunities.

City first argues that because section 65863.6 is part of chapter 4, title 7, division 1, of the Government Code which establishes procedures by which the *legislative body* enacts zoning laws and regulates use of land, it is inapplicable to measures adopted by initiative. BIA responds that section 65863.6 *itself* does not refer to "legislative body," but instead refers to "each county and city." We do not have to reach the question whether all provisions in chapter 4 of the Government Code relating to zoning regulations do or do not apply to initiative measures. Deciding this question on a section-by-section basis appears to be sufficient.

In *Associated Homebuilders, etc., Inc.* v. *City of Livermore, supra,* 18 Cal.3d at page 596, we concluded that the statutory notice and hearing provisions of Government Code sections 65853 through 65857 govern only ordinances enacted by city council action and do not limit the power of municipal electors to enact legislation by initiative. "Procedural requirements which govern *council* action . . . generally do not apply to initiatives, any more than the provisions of the initiative law govern the enactment of ordinances in council. No one would contend, for example, that an initiative of the people failed because a quorum of councilmen had not voted upon it, any more than one would contend that an ordinary ordinance of a council failed because a majority of voters had not voted upon it." (*Id.,* at p. 594, fn. omitted.)

An analysis of section 65863.6 yields a similar conclusion. When the Legislature wrote that "each county and city shall consider the effect of ordinances adopted pursuant to this chapter on the housing needs of the region . . . and balance these needs against the public service needs of its residents and available fiscal and environmental resources," it could not have intended the *electorate* to undertake this process when enacting legislation by initiative. How can one prove that the voters weighed and balanced the regional housing needs against the public service, fiscal, and environ-

mental needs? We agree with *Arnel Development Co.* v. *City of Costa Mesa* (1981) 126 Cal.App.3d 330, 335 [178 Cal.Rptr. 723], that "what was in the minds of the electorate in adopting the initiative is . . . immaterial." It is simply not logical or feasible to place this balancing requirement on the voters.

The second requirement of section 65863.6, that findings be contained in the ordinance which detail the public health, safety, and welfare factors which justify reducing housing opportunities, is merely a requirement to specify the results of the consideration and balancing process required by the first part of the section. The fact that supposed "findings" are set forth in an initiative measure which is passed by the electorate does not really show that the statutory consideration and balancing process actually took place. To so assume would place form over substance. "Findings" drawn up by the drafters of an initiative cannot truly satisfy the requirements of this statute. The section lays out procedures for a governing body to follow before enacting a growth control ordinance, but the words cannot be stretched to apply to a measure passed by initiative.

Section 65863.6 establishes guidelines that can be carried out by a city or county government, but which reasonably cannot be satisfied by the initiative process. For this reason, we conclude that the section does not apply to initiative measures. To hold otherwise would place an insurmountable obstacle in the path of the initiative process and effectively give legislative bodies the only authority to enact this sort of zoning ordinance. ■ Nevertheless, growth control ordinances must meet certain other requirements. An initiative ordinance such as Measure A still must comply with the requirement that it be substantially and reasonably related to the welfare of the region affected. (*Arnel Development Co.* v. *City of Costa Mesa* (1980) 28 Cal.3d 511, 524 [169 Cal.Rptr. 904, 620 P.2d 565]; *Associated Home Builders etc., Inc.* v. *City of Livermore, supra,* 18 Cal.3d at pp. 609-610.) It cannot unfairly discriminate against a particular parcel of property (*G & D Holland Construction Co.* v. *City of Marysville* (1970) 12 Cal.App.3d 989, 994 [91 Cal.Rptr. 227]) and it cannot be arbitrary or capricious (*Arnel Development Co.* v. *City of Costa Mesa, supra,* 126 Cal.App.3d 330, 337).

The portion of the Court of Appeal opinion which holds that Evidence Code section 669.5 does not apply to growth control ordinances enacted by means of the initiative process is reversed. The balance of the opinion is affirmed.

Bird, C. J., Broussard, J., Reynoso, J., Grodin, J., and Panelli, J., concurred.

**MOSK, J.**—I concur in the comparatively narrow issue resolved by the majority.

In doing so, however, I must repeat the misgivings I retain about the constitutional validity of no-growth or limited-growth ordinances. An impermissible elitist concept is invoked when a community constructs a legal moat around its perimeter to exclude all or most outsiders. The growing tendency of some communities to arbitrarily restrict housing to present residents appears at odds with Supreme Court pronouncements from *Shelley* v. *Kraemer* (1948) 334 U.S. 1 [92 L.Ed. 1161, 68 S.Ct. 836, 3 A.L.R.2d 441], to the words of Justice Douglas in *Reitman* v. *Mulkey* (1967) 387 U.S. 369, 385 [18 L.Ed.2d 830, 840, 87 S.Ct. 1627]: "housing is clearly marked with the public interest."

For an elaboration of views on this subject see my dissent in *Associated Home Builders etc., Inc.* v. *City of Livermore* (1976) 18 Cal.3d 582, 616 [135 Cal.Rptr. 41, 557 P.2d 473, 92 A.L.R.3d 1038].