KENNARD, J., Concurring.
While joining fully in the court’s unanimous opinion authored by the Chief lustice, I write separately to highlight the historical and legal events that have led to today’s decision and to explain why I concur in that decision.
I
This case marks the fourth time in recent years that this court has addressed issues related to the ongoing political and legal struggle about whether same-sex marriages should be recognized as valid in California. In 2004, this court held that San Francisco public officials exceeded their authority when they issued marriage licenses to same-sex couples without a prior judicial determination of the constitutionality of a California statute restricting marriage to heterosexual couples. (Lockyer v. City and County of San Francisco (2004) 33 Cal.4th 1055 [17 Cal.Rptr.3d 225, 95 P.3d 459] (Lockyer).) Agreeing with the majority that, within our state government, determining the constitutional validity of state statutes is a task reserved to the judicial branch, I joined in that decision, except insofar as it declared void some 4,000 same-sex marriages performed in reliance on licenses issued in *1166 San Francisco. (Id. at p. 1125 (cone. & dis. opn. of Kennard, J.).) My separate opinion in Lockyer explained that because the persons whose marriages were at issue were not before this court, and because judicial proceedings to determine the constitutionality of California laws barring same-sex marriage were then pending in other California courts, I would have refrained from determining the validity of those marriages. (Ibid.)
Thereafter, in May 2008, this court held that California’s statutory law denying same-sex couples the right to marry violated the privacy, due process, and equal protection provisions of our state Constitution as it then read. (In re Marriage Cases (2008) 43 Cal.4th 757 [76 Cal.Rptr.3d 683, 183 P.3d 384] (Marriage Cases)) In addition to signing the majority opinion there, I wrote separately to explain in my own words why I rejected the argument that whether same-sex couples should be allowed to marry presented essentially “a social or political issue inappropriate for judicial consideration.” (Id. at p. 859 (cone. opn. of Kennard, J.).) I wrote that “courts alone must decide whether excluding individuals from marriage because of sexual orientation can be reconciled with our state Constitution’s equal protection guarantee.” (Id. at p. 860.)
Six months later, in November 2008, California’s voters approved Proposition 8, an initiative that amended California’s Constitution by adding a new provision expressly limiting marriage to heterosexual couples. (Cal. Const., art. I, § 7.5.) In May 2009, this court rejected state constitutional challenges to Proposition 8, determining that it had been validly enacted by the procedures prescribed for constitutional amendments, rather than the more rigorous procedures prescribed for constitutional revisions, and determining also that Proposition 8 did not violate the separation of powers doctrine. (Strauss v. Horton (2009) 46 Cal.4th 364 [93 Cal.Rptr.3d 591, 207 P.3d 48] (Strauss)) This court in that case also decided that Proposition 8 did not invalidate any marriages performed before its effective date. (Strauss, at p. 474.) I signed the court’s opinion and wrote a concurring opinion in which I explained that although interpreting existing state constitutional provisions is a judicial responsibility, the voters retain legislative authority to alter the California Constitution’s language and thereby to “enlarge or reduce the personal rights that the state Constitution as so amended will thereafter guarantee and protect.” (46 Cal.4th at p. 476 (conc. opn. of Kennard, J.).)
In May 2009, shortly before this court issued its opinion rejecting the state law challenges to Proposition 8 (Strauss, supra, 46 Cal.4th 364), four individuals brought an action in federal district court challenging Proposition 8 on federal constitutional grounds. Named as defendants were the Governor, California’s Attorney General, and California’s Director of Public Health. None of those state public officials, however, litigated in defense of *1167 Proposition 8. The Governor and the Director of Public Health declined to take any position on the merits, while the Attorney General took the position that Proposition 8 violates the United States Constitution. The federal district court permitted Proposition 8’s official proponents to intervene, and it was they, and they alone, who defended the measure during the ensuing nonjury trial. (See maj. opn., ante, at pp. 1128-1130.)
After the trial, the federal district court issued an opinion concluding that Proposition 8 violates both the due process and the equal protection clauses of the federal Constitution. Only the initiative proponents appealed, to the United States Court of Appeals for the Ninth Circuit, which issued an order asking this court to decide, as a matter of state law, whether proponents of an initiative that the voters approved have either a “particularized interest” in the initiative’s validity or the authority to “assert the State’s interest” in defending the initiative. (See maj. opn., ante, at pp. 1130-1132.) Without deciding whether initiative proponents have a “particularized interest” in the initiative’s validity, this court’s unanimous opinion holds that under California law the official proponents of a voter-approved initiative have authority to “assert the state’s interest” in the validity of that initiative, and to appeal a judgment invalidating the initiative, when state officials have declined to do so. (Maj. opn., ante, at pp. 1126-1127, 1165.)
II
I agree with today’s holding and with the reasoning of the court’s unanimous opinion. I briefly explain why.
As the majority opinion in Strauss pointed out, this court’s decisions in the three earlier same-sex marriage cases illustrate the proper roles of, and the limitations imposed upon, each branch of California’s government—the executive, the legislative, and the judicial—under our state Constitution. (Strauss, supra, 46 Cal.4th 364, 385.) Lockyer shows that the role of California’s executive branch officials is to enforce statutory laws, which they must treat as valid, regardless of their personal views, unless and until the judiciary has determined otherwise. (Lockyer, supra, 33 Cal.4th 1055, 1068.) Marriage Cases shows that the role of California’s legislative branch is to enact statutes that are consistent with California’s Constitution, which among other things guarantees the rights to privacy, due process, and equal protection of the laws. (Marriage Cases, supra, 43 Cal.4th 757, 779-785, 855-856.) Strauss shows that the role of California’s judicial branch is to interpret existing state statutory and constitutional provisions, a power and responsibility that is subject to the limitation that the electorate, through the power of the initiative, can amend the state Constitution to override, from that time forward, the court’s ruling. (Strauss, supra, at pp. 385, 391-392.)
*1168 This case raises an issue of similar importance to a proper understanding of our state governmental structure under California’s Constitution: When the voters, through the exercise of their constitutionally guaranteed initiative power, have enacted a new statute or have amended the state Constitution, and the validity of that initiative is challenged in a judicial proceeding, who may appear in court to defend the initiative?
California’s state trial and appellate courts have routinely permitted initiative proponents to defend an initiative’s validity, and to appeal from a judgment holding an initiative invalid, particularly when state officials have declined to do so. (See maj. opn., ante, at pp. 1142-1144.) The two main reasons for this standard practice are easily stated.
First, the validity of a duly enacted state initiative measure (particularly one that amends the state Constitution, as Proposition 8 does) is a matter of great public importance that can be determined only through judicial proceedings. Such proceedings are most likely to produce a result that will be reliable, and that the public will find acceptable, if the issues are thoroughly and vigorously litigated. As the court’s opinion notes (maj. opn., ante, at pp. 1151-1152), initiative proponents generally have the motivation and the resources to litigate thoroughly and vigorously in defense of initiative measures they have sponsored (particularly when state officials have declined to do so), and thereby to assist the courts in a way that is vital to the integrity of the entire process.
Second, the initiative power was added to the state Constitution in 1911 (Cal. Const., art. II, §§ 8, 10) because of the view, widely held among California’s voters, that the Legislature and state officials had become so dependent on special interests that they were unable or unwilling to take actions that the public interest required. To give those same state officials sole authority to decide whether or not a duly enacted initiative will be defended in court would be inconsistent with the purpose and rationale of the initiative power, because it would allow public officials, through inaction, effectively to annul initiatives that they dislike.[1] (See Building Industry Assn. v. City of Camarillo (1986) 41 Cal.3d 810, 822 [226 Cal.Rptr. 81, 718 P.2d 68].)
*1169 Is this explanation sufficient to answer the question that the Ninth Circuit posed to this court, which is whether proponents of an initiative that the voters approved have either a “particularized interest” in the initiative’s validity or the authority to “assert the state’s interest” in defending the initiative? More specifically, does it show, as this court’s opinion holds, that initiative proponents have authority to “assert the state’s interest” in the initiative’s validity? The answer is “Yes.”
The word “authority” implies that initiative proponents have a right to defend an initiative in court. Although California’s state courts generally have discretion to grant or deny intervention, it would be an abuse of discretion for a court to deny an initiative proponent’s motion to intervene when the validity of the initiative measure is being challenged and California state officials are not actively defending it. (See maj. opn., ante, at p. 1150.) In that situation at least, it is accurate to state that initiative proponents have authority to intervene so that the integrity of the initiative process may be preserved and the validity of the initiative measure may be reliably determined through vigorous litigation at both the trial and appellate levels of California’s judicial system.
in
The authority possessed by the official proponents of an initiative measure to assert the state’s interest in that initiative’s validity complements the judiciary’s authority to make the final decision on whether the initiative is valid. As I have stressed in my separate opinions in the earlier same-sex marriages cases, interpreting state statutes and state constitutional provisions, and determining their validity, are the responsibility of the government’s judicial branch. (Strauss, supra, 46 Cal.4th 364, 476 (conc. opn. of Kennard, J.); Marriage Cases, supra, 43 Cal.4th 757, 860 (conc. opn. of Kennard, J.); Lockyer, supra, 33 Cal.4th 1055, 1125 (conc. & dis. opn. of Kennard, J.).)
The judicial system is designed to operate through public proceedings in which adversaries litigate factual and legal issues thoroughly and vigorously. When an initiative measure is challenged in court, the integrity and effectiveness of the judicial process require that a competent and spirited defense be presented. If public officials refuse to provide that defense, the ability of the initiative proponents to intervene in the pending litigation, and to appeal an adverse judgment, is inherent in, and essential to the effective exercise of, the constitutional initiative power. To hold otherwise not only would undermine *1170 that constitutional power, it also would allow state executive branch officials to effectively annul voter-approved initiatives simply by declining to defend them, thereby permitting those officials to exceed their proper role in our state government’s constitutional structure.
For these reasons, I agree that, when state officials refuse to defend a voter-approved initiative measure in court, or to appeal a judgment invalidating that initiative, its official proponents have authority, as a matter of state law, to assert the state’s interest in the initiative’s validity.

 At this point a note of caution is in order. When the named defendant in a lawsuit brought in a California state court declines to present a defense, and no party intervenes to assert a defense to the plaintiff’s claim, two different and opposite results are possible, depending on the particular circumstances. The plaintiff may win by default, resulting in entry of a default judgment or stipulated judgment granting the requested relief. (See, e.g., Code Civ. Proc., §§ 585 et seq., 664.6.) But the trial court may decide instead that without a genuine dispute between the parties, judicial action is unnecessary and inappropriate, resulting in a dismissal of the action without entry of any judgment. (See id., § 1061; Common Cause v. Board of Supervisors (1989) 49 Cal.3d 432, 439 [261 Cal.Rptr. 574, 777 P.2d 610]; Pacific Legal Foundation v. California Coastal Com. (1982) 33 Cal.3d 158, 170-171 [188 Cal.Rptr. 104, 655 *1169 P.2d 306].) Because the present matter concerns only the narrowly framed question posed by the Ninth Circuit, which of these two approaches should apply in any particular case is an issue not before this court here.