[No. A106760. First Dist., Div. Three. Apr. 27, 2005.]

CITY AND COUNTY OF SAN FRANCISCO, Plaintiff and Respondent, v. STATE OF CALIFORNIA et al., Defendants and Respondents; PROPOSITION 22 LEGAL DEFENSE AND EDUCATION FUND, Movant and Appellant. LANCY WOO et al., Plaintiffs and Respondents, v. BILL LOCKYER, Defendants and Respondents; PROPOSITION 22 LEGAL DEFENSE AND EDUCATION FUND, Movant and Appellant.

## Counsel

Alliance Defense Fund Law Center, Robert H. Tyler; Law Offices of Terry L. Thompson, Terry L. Thompson; Law Offices of Andrew P. Pugno and Andrew P. Pugno for Movant and Appellant.

Dennis J. Herrera, City Attorney, Therese M. Stewart, Chief Deputy City Attorney, Sherri Skoland Kaiser, Deputy City Attorney; Howard, Rice, Nemerovski, Canady, Falk & Rabkin, Bobbie J. Wilson, Pamela K. Fulmer and Amy Margolin for Plaintiff and Respondent City and County of San Francisco.

Heller Ehrman White & McAuliffe, Stephen V. Bomse, Richard DeNatale, Christopher F. Stoll, Ryan R. Tacorda; National Center for Lesbian Rights, Shannon Minter, Courtney Joslin; Lambda Legal Defense, Education Fund, Jon W. Davidson, Jennifer C. Pizer; ACLU Foundation of Southern California, Peter J. Eliasberg; ACLU Foundation of Northern California, Christine P. Sun, Alan L. Schlosser; Steefel, Levitt & Weiss, Clyde J. Wadsworth, Dena L. Narbaitz; Law Office of David C. Codell and David C. Codell for Plaintiffs and Respondents Woo et al.

OPINION

McGUINESS, P. J.—In a case challenging the legality of an initiative enacted by California voters, does an organization created to defend the initiative have a sufficiently direct and immediate interest in the litigation to require that it be permitted to intervene under Code of Civil Procedure section 387, subdivision (a)? Here, one such organization, the Proposition 22 Legal Defense and Education Fund (Fund), argues the trial court erred in denying its motions to intervene in two cases, since consolidated, that challenge the applicability and constitutionality of Family Code sections defining marriage in California as between a man and a woman. (Fam. Code, §§ 300, 301, 308.5.)[1] We conclude the trial court did not abuse its discretion in denying the Fund's motions for permissive intervention because the Fund has identified no direct or immediate effect that a judgment in the consolidated cases may have on it or its individual members. Although the Fund actively supports the Family Code statutes in question, its interest in upholding these laws is not sufficient to support intervention where there is no allegation the Fund or its members may suffer tangible harm from an adverse judgment. Accordingly, we affirm the order denying intervention.

## BACKGROUND

On February 12, 2004, at the direction of its mayor and county clerk, the City and County of San Francisco (City) began issuing marriage licenses to same-sex couples. (See *Lockyer v. City & County of San Francisco* (2004) 33 Cal.4th 1055, 1070–1071 [17 Cal.Rptr.3d 225, 95 P.3d 459].) The following

---

[1] All statutory references are to the Family Code unless otherwise indicated.

day, two actions were filed in superior court[2] seeking an immediate stay and writ relief to halt the city's actions. (*Id.* at p. 1071 & fn. 6.) On March 11, 2004, after original writ petitions were filed in the Supreme Court, that court stayed all proceedings in the two superior court actions, noting, however, that this order would not preclude the filing of a separate action raising a direct challenge to the constitutionality of California's marriage statutes. (*Id.* at pp. 1073–1074.) Acting immediately on this suggestion, the City filed a complaint that same day challenging the validity of Family Code provisions limiting marriage in California to unions between a man and a woman. Specifically, the City sought declarations that: (1) sections 300 and 301 violate the California Constitution insofar as they prohibit licensure of same-sex marriages;[3] and (2) section 308.5 either does not apply to in-state marriages or else is unconstitutional for the same reasons set forth for sections 300 and 301.[4] The next day, March 12, 2004, a similar action (denoted *Woo v. Lockyer*) was filed by several individual plaintiffs, who allege they are committed same-sex couples, and two advocacy groups, Our Family Coalition and Equality California.

The Fund promptly filed ex parte applications seeking leave to intervene in the two cases. After the trial court refused to grant ex parte relief, the Fund filed noticed motions to intervene. Noting that it "represents over 15,000 residents and taxpayers of California who supported and continue to support Proposition 22," the initiative now codified as section 308.5, the Fund asserted it had an interest in the outcome of the cases "because of its interest in enforcing and defending Proposition 22 and California's marriage statutes." The Fund also cited the "active support of Proposition 22" by its board

---

[2] The cases were *Thomasson v. Newsom* (Super. Ct. S.F. City and County, 2004, No. CGC-04-428794), and *Proposition 22 Legal Defense and Education Fund v. City and County of San Francisco* (Super. Ct. S.F. City and County, 2004, No. CPF-04-503943). (*Lockyer v. City and County of San Francisco, supra*, 33 Cal.4th at p. 1071.) As is apparent from the case title, the Fund was a party in the latter suit.

[3] Section 300 states, in relevant part: "Marriage is a personal relation arising out of a civil contract between a man and a woman, to which the consent of the parties capable of making that contract is necessary." The gender specifications were added to the statutory language in 1977. (Stats. 1977, ch. 339, § 1, p. 1295.) Citing a state Senate Judiciary Committee analysis, the Supreme Court has observed that legislative history clearly indicates the objective of this amendment was to prohibit persons of the same sex from marrying. (*Lockyer v. City and County of San Francisco, supra*, 33 Cal.4th at p. 1076, fn. 11, citing Sen. Com. on Judiciary, Analysis of Assem. Bill No. 607 (1977–1978 Reg. Sess.) as amended May 23, 1977, p. 1.)

Section 301 states: "An unmarried male of the age of 18 years or older, and an unmarried female of the age of 18 years or older, and not otherwise disqualified, are capable of consenting to and consummating marriage."

[4] Section 308.5, which was added to the Family Code by voter approval of Proposition 22, states: "Only marriage between a man and a woman is valid or recognized in California."

members and individual contributors as evidence of its interest in the litigation. Three of these board members, Senator William J. (Pete) Knight, Natalie Williams and Dana Cody, submitted declarations in support of the Fund's intervention motions.

Senator Knight was the official proponent of Proposition 22. He declared he "took an active role in assuring successful passage" of the initiative by working with others to create a registered ballot measure committee and by obtaining necessary signatures to submit the initiative to California voters. Now a board member and president of the Fund, Knight explained that the Fund was established approximately one year after the passage of Proposition 22 for the purpose of ensuring enforcement of the initiative, and he represented that more than 15,000 California residents had financially contributed to support this aim. Besides seeking to intervene in these actions, and others, the Fund had filed its own litigation challenging the City's licensure of same-sex marriage (see *ante*, fn. 2) and challenging Assembly Bill No. 205 (2003–2004 Reg. Sess.), by which the Legislature sought to extend many of the rights and benefits of marriage to registered domestic partners (*Knight v. Schwarzenegger* (Super. Ct. Sac. County, 2003, No. 03-AS05284)). Knight represented that "[m]any of the Fund's supporters were involved in organizing voter support" and many, like himself, had voted for Proposition 22.

Another board member, Natalie Williams, described the Fund's contributors and declared that the Fund represents her personal interests as a California elector, voter and taxpayer. Williams "regularly spoke to individuals and organizations urging support for Proposition 22" before it was enacted, and she participated in designing campaign strategies in support of the initiative. She also voted in favor of Proposition 22. In addition, Dana Cody, board member and secretary for the Fund, declared that she signed the petition to place Proposition 22 on the March 2000 ballot and participated in campaign meetings regarding the initiative. At the time, she also headed a separate public interest organization that supported passage of Proposition 22. Cody also voted in favor of Proposition 22.

On April 1, 2004, the superior court ordered the City's case consolidated with *Woo v. Lockyer*, and the plaintiffs later filed a joint opposition to the Fund's intervention motions. In support of their arguments, plaintiffs submitted California Supreme Court orders denying motions to intervene that several individuals (including Senator Knight) and a public interest group (Campaign for California Families) had filed in the original writ proceedings

before that court. (See *Lockyer v. City and County of San Francisco, supra,* 33 Cal.4th at pp. 1072–1073.) The trial court denied the Fund's motions to intervene after a hearing, and this appeal followed.[5]

## DISCUSSION

■ The Fund sought permissive intervention in the consolidated cases pursuant to Code of Civil Procedure section 387, subdivision (a). This statute states, in relevant part: "Upon timely application, any person, who has an interest in the matter in litigation, or in the success of either of the parties, or an interest against both, may intervene in the action or proceeding." (Code Civ. Proc., § 387, subd. (a).) Under Code of Civil Procedure section 387, subdivision (a), "the trial court has discretion to permit a nonparty to intervene where the following factors are met: (1) the proper procedures have been followed; (2) the nonparty has a direct and immediate interest in the action; (3) the intervention will not enlarge the issues in the litigation; and (4) the reasons for the intervention outweigh any opposition by the parties presently in the action. [Citation.]" (*Reliance Ins. Co. v. Superior Court* (2000) 84 Cal.App.4th 383, 386 [100 Cal.Rptr.2d 807].) The permissive intervention statute balances the interests of others who will be affected by the judgment against the interests of the original parties in pursuing their litigation unburdened by others. (*People v. Superior Court (Good)* (1976) 17 Cal.3d 732, 736 [131 Cal.Rptr. 800, 552 P.2d 760].)

■ Because the decision whether to allow intervention is best determined based on the particular facts in each case, it is generally left to the sound discretion of the trial court. (*Northern Cal. Psychiatric Society v. City of Berkeley* (1986) 178 Cal.App.3d 90, 109 [223 Cal.Rptr. 609]; *Fireman's Fund Ins. Co. v. Gerlach* (1976) 56 Cal.App.3d 299, 302 [128 Cal.Rptr. 396].) We therefore review an order denying leave to intervene under the abuse of discretion standard. (*Reliance Ins. Co. v. Superior Court, supra,* 84 Cal.App.4th at p. 386.) Under this standard of review, a reviewing court should not disturb the trial court's exercise of discretion unless it has resulted in a miscarriage of justice. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566 [86 Cal.Rptr. 65, 468 P.2d 193].) " '[O]ne of the essential attributes of

---

[5] After the trial court denied the Fund's intervention motions, the consolidated cases now before us were coordinated with other cases raising similar issues in *In re. Marriage Cases* (Super. Ct. S.F. City and County, 2004, JCCP No. 4365). Because the City's respondent's brief noted that the Fund is currently participating as a party in one of the cases in the coordinated proceeding (*Proposition 22 Legal Defense and Education Fund v. City and County of San Francisco* (Super. Ct. S.F. City and County, 2004, No. CPF-04-503943)), we requested supplemental briefing as to whether these developments rendered the Fund's claims on appeal moot. Having reviewed the parties' submissions, we conclude the appeal is not moot.

abuse of discretion is that it must clearly appear to effect injustice. [Citations.] Discretion is abused whenever, in its exercise, the court exceeds the bounds of reason, all of the circumstances before it being considered. The burden is on the party complaining to establish an abuse of discretion, and unless a clear case of abuse is shown and unless there has been a miscarriage of justice a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power.' [Citations.]" (*Ibid.*)

■ To support permissive intervention, it is well settled that the proposed intervener's interest in the litigation must be direct rather than consequential, and it must be an interest that is capable of determination in the action. (*People v. Superior Court (Good), supra,* 17 Cal.3d at p. 736; *Fireman's Fund Ins. Co. v. Gerlach, supra,* 56 Cal.App.3d at pp. 302–303.) The requirement of a direct and immediate interest means that the interest must be of such a direct and immediate nature that the moving party " 'will either gain or lose by the direct legal operation and effect of the judgment.' [Citation.]" (*Jersey Maid Milk Products Co. v. Brock* (1939) 13 Cal.2d 661, 663 [91 P.2d 599] (*Jersey Maid*); *Fireman's Fund Ins. Co. v. Gerlach, supra,* 56 Cal.App.3d at p. 303; *Socialist Workers Etc. Committee v. Brown* (1975) 53 Cal.App.3d 879, 891 [125 Cal.Rptr. 915] (*Socialist Workers*).) "A person has a direct interest justifying intervention in litigation where the judgment in the action *of itself* adds to or detracts from his legal rights without reference to rights and duties not involved in the litigation. [Citation.]" (*Continental Vinyl Products Corp. v. Mead Corp.* (1972) 27 Cal.App.3d 543, 549 [103 Cal.Rptr. 806], italics added (*Continental Vinyl*).) Conversely, "An interest is consequential and thus insufficient for intervention when the action in which intervention is sought does not directly affect it although the results of the action may indirectly benefit or harm its owner." (*Id.* at p. 550.)

Based on Senator Knight's role as the official proponent of Proposition 22, and based on the campaign efforts of Cody, Williams and others of its members,[6] the Fund argues it has a unique and heightened interest in the outcome of this litigation sufficient to permit intervention. The Fund contends Knight and the campaign organizers it represents gained a direct interest in litigation challenging section 308.5 "as a result of investing their personal reputation and considerable time and efforts" toward passage of Proposition 22, since a judgment ruling the statute invalid "would effectively nullify their

---

[6] Noting the Fund did not specifically allege it is a "membership organization," respondents take issue with the Fund's description of its supporters or contributors as "members." We need not, and therefore do not, resolve this dispute now. The term "members" in this opinion refers only to the supporters of Proposition 22 whom the Fund claims to represent; it is not meant as a term of art and reflects no decision as to the legal relationship between these individuals and the Fund.

efforts and harm their reputation." The Fund also asserts that, independent of the interests of its members, it has a sufficient interest to permit intervention because a ruling declaring section 308.5 unconstitutional, or limiting its application, might damage the Fund's reputation and decrease the organization's ability to attract support and contributions.

As respondents point out, however, the Fund itself played no role in sponsoring Proposition 22 because the organization was not even created until one year *after* voters passed the initiative. In addition, despite the Fund's discussion of Senator Knight's activities and interests, this case does not present the question of whether an official proponent of an initiative (Elec. Code, § 342) has a sufficiently direct and immediate interest to permit intervention in litigation challenging the validity of the law enacted. Only the Fund—and not Senator Knight or any other individual member—sought to intervene in the consolidated cases. Moreover, to the extent the Fund seeks intervention as a representative of the interests of its members (see *Bustop v. Superior Court* (1977) 69 Cal.App.3d 66, 70–71 [137 Cal.Rptr. 793]), it can no longer be said to represent Knight's interests in the litigation because Senator Knight is now deceased.[7] Nor does evidence in the record suggest any other member of the Fund was an official proponent of Proposition 22.

Assuming the Fund may seek to intervene as a representative of the interests of members who worked to put the initiative on the ballot, or who contributed time and money to the campaign effort, we conclude the trial court did not abuse its discretion in denying the Fund's intervention motions because these individuals do not themselves have a sufficiently direct and immediate interest to support intervention. (See *Bustop v. Superior Court, supra,* 69 Cal.App.3d at pp. 70–71 [organization was permitted to intervene as a representative because its members had a direct interest in litigation affecting reassignment of children to different district schools]; see also *Simpson Redwood Co. v. State of California* (1987) 196 Cal.App.3d 1192, 1200–1202 [242 Cal.Rptr. 447] (*Simpson Redwood*) [in addition to conservation group's own interests, interests of members who used a threatened park for recreation supported the group's intervention].) The Fund does not identify any way in which the judgment in these consolidated cases will, *of itself,* directly benefit or harm its members. (See *Continental Vinyl, supra,* 27 Cal.App.3d at p. 549.) Specifically, the Fund does not claim a ruling about

---

[7] The parties inform us Senator Knight died on May 7, 2004, less than a month after the trial court denied the Fund's motions to intervene. Knight's purported interest in protecting the validity of the measure enacted as a fruit of his labors appears to have been an entirely personal one; in any event, no personal representative or successor in interest has appeared to seek intervention in his place. (Cf. Code Civ. Proc., § 377.30 [surviving cause of action may be asserted by decedent's personal representative].)

the constitutionality of denying marriage licenses to same-sex couples will impair or invalidate the existing marriages of its members, or affect the rights of its members to marry persons of their choice in the future.[8] Nor has the Fund identified any diminution in legal rights, property rights or freedoms that an unfavorable judgment might impose on the 15,000 financial contributors to the Fund who oppose same-sex marriage or on the 4.6 million Californians who voted in favor of Proposition 22, whom the Fund also purports to represent. Simply put, the Fund has not alleged its members will suffer any tangible harm absent intervention.

The Fund's primary argument is that it has an especially strong interest in defending the validity of California's marriage laws because its members were heavily involved in obtaining voter approval of Proposition 22 and because the Fund itself was created for the express purpose of defending and enforcing the definition of marriage set forth in this initiative. But while the members' campaign involvement and the Fund's charter may bear upon the strength of the asserted interest, they do nothing to change the fundamental *nature* of this interest, which is philosophical or political. There is no doubt the Fund's members strongly believe marriage in California should be permitted only between opposite-sex couples, and they believed in this principle strongly enough that they expended energy and resources to have it passed into law. However, because there is no evidence its members will be directly harmed by an unfavorable judgment, the Fund's interest in defending this principle is likewise indirect. California precedents make it clear such an abstract interest is not an appropriate basis for intervention.

· In *Socialist Workers, supra,* 53 Cal.App.3d at pages 883–886, a nonprofit corporation named Common Cause sought to intervene in an action challenging the validity of Elections Code provisions requiring public disclosure of information regarding campaign contributors. Common Cause asserted it and its members had a direct interest in the public disclosure laws because the organization was created "to work for the improvement of political and governmental institutions and processes" at local, state and federal levels. (*Id.* at pp. 886.) However, the court concluded this bare political interest in the laws was not sufficient to support intervention. (*Id.* at pp. 891–892.) A

---

[8] Although the Fund's lawyer argued in the trial court that an unfavorable decision would "wholly change [the] meaning" of its contributors' marriage certificates and "take away the exclusivity of the institution" of marriage, it has not repeated these arguments on appeal. In any event, such potential consequences would hardly be limited to the Fund's contributors, but would affect all preexisting California marriages. Because the Fund's members stand in the same position as a broad cross-section of the California public regarding such potential effects of a judgment on their opposite-sex marriages, their interests are not sufficiently unique or direct to support intervention. (*Socialist Workers, supra,* 53 Cal.App.3d at p. 892.)

judgment enjoining enforcement of the disclosure laws would not be binding upon Common Cause or its members, and " 'they will be as free to pursue their business after the rendition of said judgment, as they were before.' " (*Id.* at p. 892, quoting *Jersey Maid, supra,* 13 Cal.2d at p. 664.) Likewise, a decision as to the constitutionality of the laws would have no direct effect on Common Cause members. (*Socialist Workers, supra,* 53 Cal.App.3d 892.) Finally, despite their organizational charter to improve government, the court concluded the petitioners stood in the same position as all Californians with respect to their interest in the validity of the disclosure laws, and this political interest was too "indirect and inconsequential" to support intervention. (*Ibid.*)

Also relevant is a case the Fund relied on below, *People ex rel. Rominger v. County of Trinity* (1983) 147 Cal.App.3d 655 [195 Cal.Rptr. 186] (*Rominger*). In *Rominger*, the Sierra Club appealed an order denying it leave to intervene in an action concerning the validity of a county ordinance that prohibited the spraying of phenoxy herbicides. (*Id.* at pp. 658–659.) The Sierra Club advanced two primary interests in support of intervention. First, in an argument closely resembling the Fund's here, the Sierra Club asserted it and its members had an interest in enforcement of the county's environmental laws stemming from the members' "active support" of the ordinances at issue in the case. (*Id.* at p. 661.) Second, the Sierra Club asserted its members would be harmed by a judgment invalidating the law because they use forest lands that would otherwise be sprayed with the prohibited herbicides. (*Ibid.*) As to this second interest, the appellate court observed: "In alleging that its members would be harmed unless phenoxy herbicides were prohibited, the Sierra Club places its members among those whom the ordinance was specifically designed to protect, and alleges an injury which the ordinance was specifically designed to prevent." (*Ibid.*)

Although *Rominger* ultimately concluded this second interest—i.e., potential harm to members who would be exposed to banned herbicides—was sufficient to permit intervention, the court took specific pains to observe that Sierra Club members' political interest in upholding environmental laws was *not* an appropriate basis for intervention. (*Rominger, supra,* 147 Cal.App.3d at pp. 662–663.) The court stated: "[W]e do not conclude, as the interveners apparently urge us to do, that the mere support of a statute by a person is sufficient to justify intervention by such person in an action challenging such statute. Nor do we conclude that a general political interest in upholding a statute is sufficient to intervene in a challenge to it. We reiterate that one of the purposes of intervention is 'to protect the interests of those *who may be affected by the judgment . . . .*' (*County of San Bernardino v. Harsh California Corp.* [(1959)] 52 Cal.2d [341,] 346 [340 P.2d 617]; italics added.) In each of the cases herein cited, the intervener had more than a general interest in

upholding the statute in question; rather the intervener had a specific interest that would be directly affected in a substantial way by the outcome of the litigation. *The fact the interveners and their members actively supported the ordinances in question and that they have a general interest in the enforcement of environmental laws alone will not support their intervention." (Rominger, supra,* 147 Cal.App.3d at p. 662, italics added.) Thus, the court concluded the Sierra Club had alleged a sufficient interest to intervene *only* as a representative of its members who resided in and used the county's resources. (*Id.* at pp. 662–663.)

■ The Fund attempts to distinguish *Socialist Workers* and *Rominger* by arguing it does not appear the petitioners in these cases were "directly involved" in enacting the challenged laws. This is a distinction without a difference. The Sierra Club alleged in *Rominger* its members "actively support[ed]" the specific county ordinances at issue in the case. (*Rominger, supra,* 147 Cal.App.3d at p. 661.) Although the opinion does not mention whether these individuals helped campaign to have the ordinances passed, we see no reason why the timing of their support matters. The Fund has identified no precedent holding that individuals who supported efforts to pass a law have a more significant interest, for intervention or standing purposes, than individuals who support enforcement of the law after it was enacted. Unless the law in question was specifically designed to protect these individuals, and unless they allege a potential injury from the judgment that the law was specifically enacted to prevent, intervention is inappropriate because the judgment will not directly affect either type of supporter. (*Rominger, supra,* 147 Cal.App.3d at pp. 661–663.) Here, because the Fund did not allege its members will suffer an injury that Proposition 22 was specifically designed to prevent, the trial court properly found the Fund did not have a sufficient interest in the litigation to permit intervention. (See *id.* at p. 662; *Socialist Workers, supra,* 53 Cal.App.3d at p. 892; see also *Jersey Maid, supra,* 13 Cal.2d at p. 664 [petitioners who do not directly gain or lose have only a consequential interest in litigation even where the judgment may set a precedent that could be used against them in a future action]; *Simpson Redwood, supra,* 196 Cal.App.3d at p. 1201 [noting a conservation league's mere "support" for a party's asserted property claim was insufficient to support intervention].)

The Fund also discusses several cases in an effort to establish there is a "routine practice" in California and federal courts of allowing initiative proponents to intervene when the measures they helped enact are challenged. However, *none* of the California cases cited addresses whether intervention was proper. Some simply note that an initiative sponsor was permitted to intervene in earlier proceedings (e.g., *Amwest Surety Ins. Co. v. Wilson* (1995)

11 Cal.4th 1243, 1250 [48 Cal.Rptr.2d 12, 906 P.2d 1112]; *20th Century Ins. Co. v. Garamendi* (1994) 8 Cal.4th 216, 241 [32 Cal.Rptr.2d 807, 878 P.2d 566]), while others refer to initiative sponsors as "interveners" without mentioning whether an objection was ever made to their intervention (e.g., *Legislature v. Eu* (1991) 54 Cal.3d 492, 500 [286 Cal.Rptr. 283, 816 P.2d 1309]; *City of Westminister v. County of Orange* (1988) 204 Cal.App.3d 623, 626 [251 Cal.Rptr. 511]). Because these cases do not address the propriety of intervention, they do not constitute authority supporting the Fund's position. (See *Mattco Forge, Inc. v. Arthur Young & Co.* (1997) 52 Cal.App.4th 820, 850 [60 Cal.Rptr.2d 780] ["Dicta is not authority upon which we can rely"].)[9]

 The Fund also relies on *Simpson Redwood, supra,* 196 Cal.App.3d 1192, a case from Division One of this district, for the proposition that it has a sufficient interest in the litigation for intervention purposes because a decision invalidating or narrowing section 308.5 may damage its reputation and impair its future ability to solicit financial contributions. *Simpson Redwood* is distinguishable because the proposed intervener had a clear interest in the piece of property that was the subject of the quiet title action. The conservation league that sought to intervene previously owned the land in question and had donated it to the state with a deed specifying the land was to be used solely "for state park purposes." (*Id.* at pp. 1197–1198.) The court found the league's interest in enforcing this restrictive covenant supported its intervention in litigation between the state and a lumber company that claimed ownership of a 160-acre strip of land in the park. (*Id.* at pp. 1199, 1201–1202.) In addition, as in *Rominger,* the league alleged its members frequently used the park for recreation, and their ability to use the disputed strip of land would be impaired by a judgment in favor of the lumber company. (*Id.* at pp. 1200–1201.) Although the court also noted that a loss of park property to private exploitation could impact the league's reputation and "might well translate into loss of future support and contributions" (*id.* at p. 1201), this was not the sole basis of the intervention ruling. In any event, we believe the potential for the Fund to suffer amorphous damage

---

[9] In another California case (not cited by the Fund) the Supreme Court rejected an argument that Evidence Code section 669.5 should not apply to local ballot initiatives—because local governments may not be motivated to defend them—by noting that trial courts may allow initiative proponents to intervene in such cases and assist in the defense. (*Building Industry Assn. v. City of Camarillo* (1986) 41 Cal.3d 810, 822 [226 Cal.Rptr. 81, 718 P.2d 68].) Because the permissibility of intervention under specific facts was not before the court, the court's observation about intervention in cases involving burden-shifting under Evidence Code section 669.5 was dictum and not dispositive here. (*People v. Superior Court (Marks)* (1991) 1 Cal.4th 56, 65–66 [2 Cal.Rptr.2d 389, 820 P.2d 613] [" 'Language used in any opinion is of course to be understood in the light of the facts and the issue then before the court, and an opinion is not authority for a proposition not therein considered. [Citation.]' [Citations.]"].)

to its organizational "reputation" as a result of an unfavorable court decision is far too speculative a basis upon which to conclude the trial court was required to permit intervention. (See *Rominger, supra,* 147 Cal.App.3d at pp. 662–663; *Timberidge Enterprises, Inc. v. City of Santa Rosa* (1978) 86 Cal.App.3d 873, 881 [150 Cal.Rptr. 606] [although intervener need not show it will inevitably be harmed by an adverse judgment, it must show there is a "substantial *probability*" its interests will be so affected].) Any change in the Fund's reputation, or any drop in its fundraising revenues, would be merely a *consequence* of the judgment, and not a result of the legal operation of the judgment itself. (See *Jersey Maid, supra,* 13 Cal.2d at p. 664.)

■ The Fund also cites a handful of federal cases from California in which initiative sponsors and supporters were permitted to intervene.[10] Federal cases deciding whether intervention is appropriate under the more lenient test of rule 24(a) of the Federal Rules of Civil Procedure (28 U.S.C.), which requires only that the applicant have an "interest" in the litigation which a disposition "may as a practical matter impair or impede,"[11] are of course not determinative of whether intervention is proper under the stricter test of Code of Civil Procedure section 387, subdivision (a). (See 4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 194, p. 251 [noting rule 24 "goes far beyond" California law "in allowing permissive intervention when there is merely a common question of law or fact"].) Moreover, there is serious doubt whether the two federal decisions upon which the Fund relies remain good law.

In *Yniguez v. State of Arizona* (9th Cir. 1991) 939 F.2d 727, 731–733, a panel of the Ninth Circuit Court of Appeals concluded official sponsors of an English-only ballot initiative had a sufficient interest to intervene and pursue an appeal the parties had abandoned because an adverse decision on the law's constitutionality would "essentially nullif[y] the considerable efforts" of these sponsors in placing the initiative on the ballot and campaigning for its passage. On a writ of certiorari from the ultimate judgment in the case, however, the United States Supreme Court sharply criticized the Ninth Circuit's

---

[10] In addition the Fund also requested judicial notice of an order permitting it to intervene in litigation in the Central District of California. From across the aisle, the *Woo* respondents have requested judicial notice of orders from six states denying requests by state legislators to intervene in same-sex marriage cases. Although we take judicial notice of these materials pursuant to Evidence Code sections 452 and 453, we find none of the orders persuasive due to their lack of analysis.

[11] "Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." (Fed. Rules Civ. Proc., rule 24(a), 28 U.S.C.)

decision to allow the initiative sponsors to intervene and prosecute the appeal. (*Arizonans for Official English v. Arizona* (1997) 520 U.S. 43, 65–66 [137 L.Ed.2d 170, 117 S.Ct. 1055].) Although in an analogous context, state legislators have been held to have standing to defend the constitutionality of a state law *if* state law authorizes such activity, the Supreme Court observed it was "aware of no Arizona law appointing initiative sponsors as agents of the people of Arizona to defend, in lieu of public officials, the constitutionality of initiatives made law of the State." (*Id.* at p. 65.) Nor had the Supreme Court itself "ever identified initiative proponents as Article-III-qualified defenders of the measures they advocated. [Citation.]" (*Ibid.*) Thus, even though the court ultimately decided the appeal on a different procedural ground (mootness), the justices observed they had "grave doubts" about whether the initiative sponsors satisfied article III standing requirements. (*Id.* at p. 66.)

In the other federal case the Fund cites as persuasive authority, a district court relied on *Yniguez* in concluding official proponents of California's Proposition 140 had asserted a sufficient interest for intervention under rule 24(a). (*Bates v. Jones* (N.D.Cal 1995) 904 F.Supp. 1080, 1086.) However, in a later order in the same case, the district court observed that after it permitted intervention, the *Yniguez* decision was called into question by the Supreme Court. (*Bates v. Jones* (N.D.Cal 1997) 958 F.Supp. 1446, 1453, fn. 2.) The district court remarked, "It is thus doubtful that Interveners have standing." (*Ibid.*) Given these subsequent histories, we find neither federal intervention decision upon which the Fund relies to be persuasive.

In short, the Fund has directed us to no authority holding that petitioners who supported and campaigned for a ballot initiative have such a direct and immediate interest in litigation challenging the initiative's validity that they must be permitted to intervene under Code of Civil Procedure section 387, subdivision (a). Because the Fund failed to assert that it, or any of its members, would be directly affected by a judgment in this case, the trial court did not abuse its discretion in denying the Fund's motions to intervene. Having decided the Fund lacked a sufficiently direct and immediate interest to permit intervention, we need not address the parties' arguments regarding whether intervention would improperly enlarge the issues in the litigation and whether the rights of the original parties outweigh the reasons for intervention. Finally, it is important to note that even though the Fund does not enjoy the status of a party in these consolidated cases, it may have the opportunity to present its views on the validity of California's marriage statutes through amicus curiae briefs. (See *Jersey Maid, supra,* 13 Cal.2d at p. 665.)

## DISPOSITION

The order denying the Fund's motions to intervene in the consolidated cases is affirmed. The Fund shall bear costs on appeal.

Corrigan, J., and Parrilli, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 20, 2005. George, C. J., and Baxter, J., did not participate therein.