**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KRISTIN M. PERRY; SANDRA B.
STIER; PAUL T. KATAMI; JEFFREY J.
ZARRILLO,

*Plaintiffs-Appellees,*

CITY AND COUNTY OF SAN
FRANCISCO,

*Plaintiff-Intervenor-Appellee,*

v.

ARNOLD SCHWARZENEGGER, in his
official capacity as Governor of
California; EDMUND G. BROWN, JR.,
in his official capacity as Attorney
General of California; MARK B.
HORTON, in his official capacity as
Director of the California
Department of Public Health &
State Registrar of Vital Statistics;
LINETTE SCOTT, in her official
capacity as Deputy Director of
Health Information & Strategic
Planning for the California
Department of Public Health;
PATRICK O'CONNELL, in his official
capacity as Clerk-Recorder for the
County of Alameda; DEAN C.
LOGAN, in his official capacity as
Registrar-Recorder/County Clerk
for the County of Los Angeles,

*Defendants,*

|  | No. 10-16696 |
| --- | --- |
| and | D.C. No. |
| DENNIS HOLLINGSWORTH; GAIL J. KNIGHT; MARTIN F. GUTIERREZ; HAK-SHING WILLIAM TAM; MARK A. JANSSON; PROTECTMARRIAGE.COM-YES ON 8, A PROJECT OF CALIFORNIA RENEWAL, as official proponents of Proposition 8, *Defendants-Intervenors-Appellants.* | 3:09-cv-02292-VRW Northern District of California, San Francisco ORDER CERTIFYING A QUESTION TO THE SUPREME COURT OF CALIFORNIA |

Filed January 4, 2011

Before: Stephen Reinhardt, Michael Daly Hawkins, and
N. Randy Smith, Circuit Judges.

**ORDER**

Before this panel of the United States Court of Appeals for the Ninth Circuit is an appeal concerning the constitutionality under the United States Constitution of Article I, § 7.5 of the California Constitution ("Proposition 8"). Because we cannot consider this important constitutional question unless the appellants before us have standing to raise it, and in light of *Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997) ("*Arizonans*"), it is critical that we be advised of the rights under California law of the official proponents of an initiative measure to defend the constitutionality of that measure upon its adoption by the People when the state officers charged with the laws' enforcement, including the Attorney General,

refuse to provide such a defense or appeal a judgment declaring the measure unconstitutional. As we are aware of no controlling state precedent on this precise question, we respectfully ask the Supreme Court of California to exercise its discretion to accept and decide the certified question below.

## I.  Question Certified

Pursuant to Rule 8.548 of the California Rules of Court, we request that the Court answer the following question:

> Whether under Article II, Section 8 of the California Constitution, or otherwise under California law, the official proponents of an initiative measure possess either a particularized interest in the initiative's validity or the authority to assert the State's interest in the initiative's validity, which would enable them to defend the constitutionality of the initiative upon its adoption or appeal a judgment invalidating the initiative, when the public officials charged with that duty refuse to do so.

We understand that the Court may reformulate our question, and we agree to accept and follow the Court's decision. Cal. R. Ct. 8.548(b)(2), (f)(5).

## II.  Background

### A

This appeal concerns a subject that is familiar to the Supreme Court of California: the constitutionality of excluding same-sex couples from the institution of marriage in California. In May 2008, the Court declared that California statutes limiting marriage to opposite-sex couples were unconstitutional under the equal protection clause of the California Constitution. The Court then invalidated those statutes

and prohibited their enforcement. *In re Marriage Cases*, 183 P.3d 384, 452-453 (Cal. 2008). In the months that followed, California issued approximately 18,000 marriage licenses to same-sex couples.

Then, in November 2008, the People of the State of California voted to adopt Proposition 8, an initiative constitutional amendment that "added a new section — section 7.5 — to article I of the California Constitution, providing: 'Only marriage between a man and a woman is valid or recognized in California.' " *Strauss v. Horton*, 207 P.3d 48, 59 (Cal. 2009). Proposition 8 had been placed on the ballot by five Californians, Defendants-Intervenors-Appellants Dennis Hollingsworth, Gail J. Knight, Martin F. Gutierrez, Hak-Shing William Tam, and Mark A. Jansson, whom California law recognizes as the official "proponents" of the measure.[1] Cal. Elec. Code § 342.

After Proposition 8 was enacted, opponents of the measure brought an original action for a writ of mandate in the

---

[1]As the official "proponents," the intervenors were responsible for paying the initiative filing fee (Cal. Elec. Code § 9001), requesting that the Attorney General prepare a "circulating title and summary" of the initiative for the intervenors to present to electors when circulating a petition to qualify the initiative for the ballot (Cal. Elec. Code § 9001), preparing petition forms to collect signatures to qualify the initiative for the ballot (Cal. Elec. Code §§ 9001, 9012, 9014), managing signature gatherers (Cal. Elec. Code §§ 9607, 9609), filing the petitions for signature verification (Cal. Elec. Code § 9032), and designating arguments in favor of the initiative for the voter information guide (Cal. Elec. Code § 9067, 9600). Proponents also established "ProtectMarriage.com — Yes on 8, a Project of California Renewal," also a defendant-intervenor-appellant here, as a "ballot measure committee" to support Proposition 8 under Cal. Gov't Code section 84107. ProtectMarriage.com was responsible for all aspects of the campaign to qualify Proposition 8 for the ballot, including the collection of 1.2 million signatures. The committee spent $37 million to qualify Proposition 8 for the ballot and to campaign in its favor in order to ensure its adoption. *See Perry v. Schwarzenegger*, 704 F. Supp. 2d 921, 954-955 (N.D. Cal. 2010).

Supreme Court of California, seeking invalidation of Proposition 8 as an improper attempt by the People to revise, rather than amend, the California Constitution through exercise of the initiative power. The three named respondents in that proceeding, Mark D. Horton, Linette Scott, and Edmund G. Brown, Jr. — also defendants here — refused to defend the measure's constitutionality under state law, but remained parties to the proceeding; Proponents were permitted to intervene and defended Proposition 8 as a lawful initiative constitutional amendment. The Court then upheld Proposition 8 against the opponents' challenge, but preserved the 18,000 marriages of same-sex couples that had already been performed. *Strauss*, 207 P.3d at 114, 119, 122.

## B

Days before *Strauss* was decided, plaintiffs-appellees filed this action in the United States District Court for the Northern District of California, alleging that Proposition 8 violates the Fourteenth Amendment to the United States Constitution and seeking declaratory and injunctive relief. The named defendants — the three officers who were respondents in *Strauss*, plus the Governor and the County Clerks of Alameda and Los Angeles Counties — filed answers to the complaint but declined to defend the measure's constitutionality. Proponents were then permitted to intervene to do so. After a twelve-day bench trial, the district court made findings of fact, and "conclude[d] that Proposition 8 is unconstitutional" under both the Due Process Clause and the Equal Protection Clause. *Perry v. Schwarzenegger*, 704 F. Supp. 2d. 921, 1003 (N.D. Cal. 2010). The court then entered the following injunction:

> Defendants in their official capacities, and all persons under the control or supervision of defendants, are permanently enjoined from applying or enforcing Article I, § 7.5 of the California Constitution.

This court stayed the injunction pending appeal; Proposition 8 remains in effect in California pending our final decision. Plaintiffs and Proponents disagree as to the legal status of Proposition 8 should it be determined that we are without jurisdiction to hear this appeal.[2]

Proponents appealed the district court order, but the named official defendants did not. We asked the parties to brief, as a preliminary matter, the Proponents' standing to seek review of the district court order, in light of *Arizonans* and earlier decisions of the United States Supreme Court. Having considered the parties' briefs and arguments, we are now convinced that Proponents' claim to standing depends on Proponents' particularized interests created by state law or their authority under state law to defend the constitutionality of the initiative, which rights it appears to us have not yet been clearly defined by the Court. We therefore request clarification in order to determine whether we have jurisdiction to decide this case.

## III.  Explanation of Certification

This court is obligated to ensure that it has jurisdiction over this appeal before proceeding to the important constitutional questions it presents, and we must dismiss the appeal if we

---

[2]Plaintiffs argue that Proponents have no standing and therefore ask us to simply dismiss this appeal. At oral argument, Plaintiffs contended that were we to do so, the district court decision would be binding on the named state officers and on the county clerks in two counties only, Los Angeles and Alameda, and that further litigation in the state courts would be necessary to clarify the legal status of Proposition 8 in the remaining fifty-six counties. Alternatively, they suggested that the Governor, Attorney General, or State Registrar would be required to issue a "legal directive" to the county clerks to cease enforcing Proposition 8.

Proponents argue that if they lack standing to appeal, then we are required not only to dismiss the appeal but also to vacate the district court judgment. In any event, we are required to resolve, *nostra sponte*, the issue of standing before proceeding further with this matter.

lack jurisdiction. The certified question therefore is dispositive of our very ability to hear this case.[3]

# A

"The standing Article III requires must be met by persons seeking appellate review, just as it must be met by persons appearing in courts of first instance." *Arizonans*, 520 U.S. at 64. Having been granted intervention in the district court is not enough to establish standing to appeal; "an intervenor's right to continue a suit in the absence of the party on whose side intervention was permitted is contingent upon a showing by the intervenor that he fulfills the requirements of Art. III." *Diamond v. Charles*, 476 U.S. 54, 68 (1986). Where a plaintiff in federal district court must demonstrate "an 'injury in fact' — an invasion of a legally protected interest" by the defendant, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) — so too must an appellant prove his standing by establishing "a concrete injury related to the judgment" he seeks to appeal. *W. Watersheds Project v. Kraayenbrink*, 620 F.3d 1187, 1196 (9th Cir. 2010). States, however, "ha[ve] the power to create new interests, the invasion of which may confer standing." *Diamond*, 476 U.S. at 65 n.17. "In such a case, the requirements of Article III may be met." *Id.*

Proponents contend that they possess such an "interest that is created and secured by California law" — an interest in the validity of the voter-approved initiative they sponsored, which interest is "inva[ded]" by the judgment declaring Proposition 8 unconstitutional. Proponents' Br. 22. They argue that their interest as the official proponents of the initiative is different

---

[3]In a separate published opinion filed concurrently with this order, we dismiss for lack of standing the appeal on the merits in a companion case, number 10-16751, that was filed by the County of Imperial, its Board of Supervisors, and a Deputy Clerk of the County. Therefore, we may reach the merits of the constitutional questions presented only if Proponents have standing to appeal.

in kind than that of the citizens of California generally. If Proponents do possess such a particularized interest, they would have standing to appeal the judgment below.

Proponents also claim an alternative and independent additional basis for standing: The State of California itself has an undisputed interest in the validity of its laws, and Proponents argue that "they may directly assert the State's interest in defending the constitutionality of its laws." Proponents' Br. 19. Proponents allege they are able to represent the State's interest because they "have 'authority under state law' to defend the constitutionality of an initiative they have successfully sponsored . . . acting 'as agents of the people' of California 'in lieu of public officials' who refuse to do so." *Id.* (quoting *Karcher v. May*, 484 U.S. 72, 82 (1987) and *Arizonans*, 520 U.S. at 65). If California does grant the official proponents of an initiative the authority to represent the State's interest in defending a voter-approved initiative when public officials have declined to do so or to appeal a judgment invalidating the initiative, then Proponents would also have standing to appeal on behalf of the State.

**B**

The parties agree that "Proponents' standing" — and therefore our ability to decide this appeal — " 'rises or falls' on whether California law" affords them the interest or authority described in the previous section. Proponents' Reply Br. at 8 (quoting Plaintiffs' Br. 30-31). It is not sufficiently clear to us, however, whether California law does so. In the absence of controlling authority from the highest court of California on these important questions of an initiative proponent's rights and interests in the particular circumstances before us, we believe we are compelled to seek such an authoritative statement of California law. *Cf. Arizonans*, 520 U.S. at 65 ("[W]*e are aware of no Arizona law* appointing initiative sponsors as agents of the people of Arizona to defend, in lieu

of public officials, the constitutionality of initiatives made law of the State.") (emphasis added).

We are aware that in California, "All political power is inherent in the people," Cal. Const. art. II, § 1, and that to that end, Article II, section 8(a) of the California Constitution provides, "The initiative is the power of the electors to propose statutes and amendments to the Constitution and to adopt or reject them." We are also aware that the Supreme Court of California has described the initiative power as "one of the most precious rights of our democratic process," and indeed, that "the sovereign people's initiative power" is considered to be a "fundamental right." *Assoc. Home Builders v. City of Livermore*, 557 P. 2d 473, 477 (Cal. 1976); *Brosnahan v. Brown*, 651 P.2d 274, 277 (Cal. 1982); *Costa v. Super. Ct.*, 128 P.3d 675, 686 (Cal. 2006). Finally, we are aware of California law that the courts have a "solemn duty to jealously guard" that right, *Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization*, 583 P.2d 1281, 1302 (Cal. 1978) (internal quotation marks omitted), "and to prevent any action which would improperly annul that right," *Martin v. Smith*, 176 Cal. App. 2d 115, 117 (1959).

The power of the citizen initiative has, since its inception, enjoyed a highly protected status in California. For example, the Legislature may not amend or repeal an initiative statute unless the People have approved of its doing so. Cal. Const. art. II, § 10(c).[4] Most relevant here, "the Governor has no veto power over initiatives," *Kennedy Wholesale, Inc. v. State Bd. of Equalization*, 806 P.2d 1360, 1364 n.5 (Cal. 1991), and the Attorney General possesses no veto power at all.

---

[4]*See People v. Kelly*, 222 P.3d 186, 200 (Cal. 2010) ("California's bar on legislative amendment of initiative statutes stands in stark contrast to the analogous constitutional provisions of other states. No other state in the nation carries the concept of initiatives as 'written in stone' to such lengths as to forbid their legislatures from updating or amending initiative legislation.") (internal quotation marks and citations omitted).

Although the Governor has chosen not to defend Proposition 8 in these proceedings, it is not clear whether he may, consistent with the California Constitution, achieve through a refusal to litigate what he may not do directly: effectively veto the initiative by refusing to defend it or appeal a judgment invalidating it, if no one else — including the initiative's proponents — is qualified to do so.[5] Proponents argue that such a harsh result is avoided if the balance of power provided in the California Constitution establishes that proponents of an initiative are authorized to defend that initiative, as agents of the People, in lieu of public officials who refuse to do so. Similarly, under California law, the proponents of an initiative may possess a particularized interest in defending the constitutionality of their initiative upon its enactment; the Constitution's purpose in reserving the initiative power to the People would appear to be ill-served by allowing elected officials to nullify either proponents' efforts to "propose statutes and amendments to the Constitution" or the People's right "to adopt or reject" such propositions. Cal. Const. art. II, § 8(a). Rather than rely on our own understanding of this balance of power under the California Constitution, however, we certify the question so that the Court may provide an authoritative answer as to the rights, interests, and authority under California law of the official proponents of an initiative measure to defend its validity upon its enactment in the case of a challenge to its constitutionality, where the state officials charged with that duty refuse to execute it.

Proponents and an *amicus*, the Center for Constitutional Jurisprudence, have referred us to numerous cases in which proponents of an initiative defended against pre-election challenges to their initiatives,[6] defended against post-election

---

[5]Here, of course, the Attorney General was also a defendant and refused to defend the initiative along with the Governor.

[6]*See Indep. Energy Producers Ass'n v. McPherson*, 136 P.3d 178 (Cal. 2006) (proponents defended against challenge that subject matter of initiative was improper under the state constitution); *Legislature v. Deukmejian*,

challenges concerning the validity of their exercise of the initiative power,[7] and proponents of an initiative were permitted to intervene to defend, alongside government defendants, the validity of their initiatives.[8] None of those cases explained, however, whether or why proponents have the right to defend the validity of their initiative upon enactment when the state officials charged with the law's enforcement refuse to do so, either because proponents have a particularized state-law interest in doing so or because they are authorized to represent the State's interest in defending the initiative adopted by the People. In particular, Proponents rely on *Strauss v. Horton* as

---

669 P.2d 17 (Cal. 1983) (same); *see also Costa v. Super. Ct.*, 128 P.3d 675 (Cal. 2006) (challenge based on differences between the versions of the measure (1) submitted to the Attorney General prior to the circulation of the initiative petition, and (2) printed on the petition that was circulated for signature); *Senate v. Jones*, 988 P.2d 1089 (Cal. 1999) (challenge based on single-subject rule for initiatives); *Brosnahan v. Eu*, 641 P.2d 200 (Cal. 1982) (challenge to signatures qualifying measure for the ballot); *Vandeleur v. Jordan*, 82 P.2d 455 (Cal. 1938) (challenge based on format and content of initiative petition).

[7]*See Strauss v. Horton*, 207 P.3d 48 (Cal. 2009) (Proponents permitted to intervene to defend Proposition 8 as a valid exercise of the initiative power to amend, rather than revise, the California Constitution); *City of Westminster v. County of Orange*, 204 Cal. App. 3d 623 (1988) (proponents intervened to defend against challenge that subject matter of initiative — tax levies — was improper under the state constitution); *Community Health Ass'n v. Bd. of Supervisors*, 146 Cal. App. 3d 990 (1983) (same).

[8]*See Amwest Surety Ins. Co. v. Wilson*, 906 P.2d 1112 (Cal. 1995) (proponents intervened in state official's challenge to an act of the Legislature that amended, without voter approval, an initiative); *20th Century Ins. Co. v. Garamendi*, 878 P.2d 566 (Cal. 1994) (proponents intervened to defend, alongside state official, the implementation of state initiative); *Calfarm Ins. Co. v. Deukmejian*, 771 P.2d 1247 (Cal. 1989) (proponents intervened as "real parties in interest" to defend, alongside state officials, challenge that state initiative was unconstitutional); *People ex rel. Deukmejian v. County of Mendocino*, 683 P.2d 1150 (Cal. 1984) (proponents intervened to assist county officials in defending against challenge that county initiative ordinance was preempted by state law).

evidence that "California law authorizes Proponents to defend Proposition 8 on behalf of the State," because the Supreme Court of California "permitted *these very Proponents* to defend *this very Proposition* when the Attorney General would not do so." Proponents' Br. 20. But the Court did not explain in *Strauss* why Proponents were permitted to intervene, and under *Arizonans* we cannot simply infer from the fact that they were allowed to do so that they have either the particularized state-created interest or the authority under the state constitution or other state law to act as agents of the People that they would need to be proper sole appellants here.

We are aware of only one case presenting circumstances similar to those here (a post-enactment substantive challenge to an initiative) that provides any discussion of official proponents' rights to appeal a lower court decision regarding a ballot initiative in the absence of the government officials charged with its enforcement: *Simac Design, Inc. v. Alciati*, 92 Cal. App. 3d 146 (1979). We recognize that the issues in that case were in some regard dissimilar, however, and it was decided by only an intermediate court and has not been discussed in subsequent decisions of the Supreme Court of California. We therefore believe that we are required under *Arizonans* to request a more definitive statement from the State's highest court rather than treat that decision as controlling.[9]

We do not find *Building Industry Ass'n v. City of Camarillo*, 718 P.2d 68 (Cal. 1986), to be controlling authority for the question certified here either. That case explained, in dicta, that if government officials failed to defend an initiative-enacted law "with vigor," then "[p]ermitting intervention by the initiative proponents . . . would serve to guard

---

[9]We recognize that the discussion of proponents' standing in *Arizonans* is *obiter dictum*. *See* 520 U.S. at 65-66. Nevertheless it is a forceful statement in a decision by a unanimous Court and we believe we would be unwise to disregard it.

the people's right to exercise initiative power, a right that must be jealously defended by the courts." *Id.* at 75. While the statement may accurately express the intent of the California Constitution, it was not a holding, and thus would not appear to satisfy the requirements of *Arizonans*.[10] In addition, because it addresses possible intervention, it does not directly address the authority or interest of initiative proponents. Consequently, although all the cases cited underscore the significant interest initiative proponents have in defending their measures in the courts, we lack an authoritative statement of California law that would establish proponents' rights to defend the validity of their initiatives, whether because they have a particularized state-created interest in doing so or because under California law they are authorized to assert the State's interest, on behalf of the People, in defending the constitutionality of an initiative measure or appealing a judgment invalidating that measure, when the state officials charged with that responsibility refuse to do so. We believe that we require such an authoritative determination by the Court before we can determine whether Proponents have standing to maintain this appeal.

## C

The question we certify affects the "fundamental right" under the California Constitution of the State's electors to

---

[10]That the statement in *Building Industry Ass'n* is *dictum* was recognized in *City & County of San Francisco v. State*, 128 Cal. App. 4th 1030, 1042 n.9 (2005). That case did not hold to the contrary, however. The Court of Appeal rejected as insufficient the interest in defending Proposition 22 claimed by a group formed one year after its adoption, but noted that "this case does not present the question of whether an *official* proponent of an initiative (Elec. Code, § 342) has a sufficiently direct and immediate interest to permit intervention in litigation challenging the validity of the law enacted." *Id.* at 1038 (emphasis added). The Court's subsequent decision in *In re Marriage Cases* did not answer that question either, and it described the Proposition 22 Legal Defense Fund as an "advocacy group" rather than the official proponents of the initiative. 183 P.3d at 405-406.

participate directly in the governance of their State. The answer to that question will also affect our ability to consider the fundamental rights under the United States Constitution asserted by Plaintiffs. We therefore pray the Court to accept our request for certification.

## IV. Administrative Information

The names and addresses of lead counsel for the parties and intervenors are listed in the appendix at the end of this order. Cal. R. Ct. 8.548(b)(1). A complete listing of all counsel for parties, intervenors, and *amici curiae* is provided in the unpublished memorandum filed concurrently herewith. If the Supreme Court of California accepts this request, the Defendants-Intervenors-Appellants (Proponents) should be deemed the petitioners.

The Clerk is hereby directed to transmit forthwith to the Court the original and ten copies of this order and accompanying memorandum, as well as a certificate of service on the parties. Cal. R. Ct. 8.548(d). The clerk shall also transmit the following along with this request: ten copies of the district court Findings of Fact / Conclusions of Law / Order (704 F. Supp. 2d. 921 (N.D. Cal. 2010)); ten copies of the Permanent Injunction issued by the district court (docket entry 728 in No. C 09-2292-VRW (N.D. Cal. Aug. 12, 2010)); a copy of the video recording of the oral argument heard in these appeals on December 6, 2010; the briefs of the parties and intervenors in this appeal; and the briefs *amicus curiae* filed by (1) the Center for Constitutional Jurisprudence and (2) Equality California in No. 10-16696. The Clerk shall provide additional record materials if so requested by the Supreme Court of California. Cal. R. Ct. 8.548(c).

The case is withdrawn from submission, and further proceedings in this court are stayed pending final action by the Supreme Court of California. The parties shall notify the Clerk of this Court within three days after the Court accepts

or rejects certification, and again within three days if the Court renders an opinion. The panel retains jurisdiction over further proceedings.

**IT IS SO ORDERED.**

APPENDIX

*Lead Counsel for Defendants-Intervenors-Appellants*
Charles J. Cooper (argued)
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, DC 20036

*Lead Counsel for Plaintiffs-Appellees*
David Boies (argued)
BOIES, SCHILLER & FLEXNER
333 Main St.
Armonk, NY 10504

Theodore Olson (argued)
GIBSON DUNN & CRUTCHER, LLP
1050 Connecticut Ave., NW
Washington, DC 20036-5306

*Lead Counsel for Plaintiff-Intervenor-Appellee City and County of San Francisco*
Therese Stewart, Chief Deputy City Attorney (argued)
SAN FRANCISCO CITY ATTORNEY'S OFFICE
City Hall 234
One Dr. Carlton B. Goodlett Place
San Francisco, CA 94102-4682

*Lead Counsel for Defendant Arnold Schwarzenegger, in his official capacity as Governor of California*
Tamar Pachter, Deputy Attorney General (no appearance)
CALIFORNIA DEPARTMENT OF JUSTICE
Suite 11000
455 Golden Gate Ave.
San Francisco, CA 94102

Andrew W. Stroud, Attorney (no appearance)
Mennemeier, Glassman & Stroud LLP
980 9th Street
Suite 1700
Sacramento, CA 95814

*Lead Counsel for Defendant Edmund G. Brown, Jr., in his official capacity as Attorney General of California*
Tamar Pachter, Deputy Attorney General (no appearance)
(see above)

*Lead Counsel for Defendants Mark B. Horton, in his official capacity as Director of the California Department of Public Health & State Registrar of Vital Statistics, and Linette Scott, in her official capacity as Deputy Director of Health Information & Strategic Planning for the California Department of Public Health*
Kenneth C. Mennemeier, Jr. (no appearance)
Mennemeier, Glassman & Stroud LLP
980 9th Street
Suite 1700
Sacramento, CA 95814

*Lead Counsel for Defendant Patrick O'Connell, in his official capacity as Clerk-Recorder for the County of Alameda*
Claude Franklin Kolm, Esquire (no appearance)
OFFICE OF COUNTY COUNSEL
Suite 450
1221 Oak Street
Oakland, CA 94612-4296

*Lead Counsel for Defendant Dean C. Logan, in his official capacity as Registrar-Recorder/County Clerk for the County of Los Angeles*
Judy W. Whitehurst, Principal Deputy County Counsel (no appearance)
LOS ANGELES COUNTY COUNSEL
6th Floor
648 Kenneth Hahn Hall of Administration
500 West Temple Street
Los Angeles, CA 90012-2713